In the Matter of MARSHALL G. AUSE, Respondent-Appellant, v EDWARD V. REGAN, Individually and as Erie County Executive, et al., Constituting a Board of Review, et al., Appellants-Respondents.

Fourth Department, November 14, 1977

*Thaddeus J. Szymanski, County Attorney (Leonard G. Kriss of counsel), for appellants-respondents.*

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Evan E. James* and *William Feigenbaum* of counsel), for respondent-appellant.

HANCOCK, JR., J. Petitioner and respondents have appealed from separate provisions and determinations in an order granting in part and denying in part respondents' motion (pursuant to CPLR 3211, subd [a], par 7) to dismiss petitioner's CPLR article 78 proceeding commenced following the termination of his services as Superintendent of the Erie County E. J. Meyer Memorial Hospital.

Petitioner was appointed by respondent Regan in May, 1973 pursuant to section 1602 of the Erie County Charter (Local Laws, 1959, No. 1 of County of Erie) which provides that the county hospital superintendent shall be appointed by the county executive, subject to confirmation by the county legislature and that the appointment "shall be *for the term or balance thereof* of the county executive making such appointment." (Emphasis supplied.) At the time of petitioner's appointment and his later confirmation by the Legislature on June 5, 1973, respondent Regan, the appointing officer, was the county executive, having been duly elected for a term of office which was to expire on December 31, 1975.[1]

---

1. County Executive Regan was elected in November of 1971 for a four-year term commencing January 1, 1972 and ending December 31, 1975 (Erie County Charter, § 301).

After the commencement of respondent Regan's new term of office as county executive on January 1, 1976, following his re-election in November, 1975, petitioner was not reappointed. He continued to hold the position until he received a written notice on October 4, 1976 advising him of the termination of his employment effective October 1, 1976. Petitioner's formal request for a hearing pursuant to the pertinent provisions of the Erie County Charter and the Erie County Administrative Code was rejected on October 14, 1976.

Upon petitioner's request, respondent Regan, in a private letter to petitioner dated October 22, 1976, outlined the reasons for petitioner's dismissal.[2] No public statement was issued with respect to the reasons for petitioner's termination.

Petitioner alleged four causes of action:

(1) that the termination of his employment without a pre-termination hearing violated section 1903 of the Erie County Charter and subdivision g of section 3.09 of the Erie County Administrative Code (Local Laws, 1960, No. 1 of County of Erie);

(2) that as an honorably discharged veteran holding a permanent position in the classified service he was improperly dismissed without a hearing in violation of section 75 of the Civil Service Law;

(3) that respondent Regan's failure to issue a public statement explaining petitioner's determination stigmatized petitioner and deprived him of "liberty" and "property" without due process of law; and

(4) that he was discharged in bad faith for partisan political reasons in violation of his constitutional rights under the First and Fourteenth Amendments.

In its written decision and the order based thereon, Special Term:

(1) dismissed the first cause of action;

(2) ordered an immediate trial pursuant to CPLR 7804 (subd [h]) of factual issues presented in the second cause of action relating to petitioner's status as a member of the classified

---

2. The reasons given for the decision to dismiss petitioner were petitioner's "failure to take * * * vigorous initiative" and his apparent inability to "discharge the leadership and management responsibilities required".

civil service and as a veteran entitled to claim the protection of Civil Service Law (§ 75, subd 1, par [b]);[3]

(3) directed an administrative hearing as to the third cause of action on the question of whether petitioner had been stigmatized "because of the attendant publicity, the absence of formal charges, and the absence of a public statement as to the reasons for petitioner's dismissal;" and

(4) as to the fourth cause of action, ordered an immediate trial pursuant to CPLR 7804 (subd [h]) as to whether petitioner held a "policymaking position" such as would except him from the general prohibition against political patronage dismissals set forth in *Elrod v Burns* (427 US 347).

I

We agree with Special Term's dismissal of petitioner's first cause of action claiming that he was improperly deprived of his right to a hearing under the Erie County Charter and the Erie County Administrative Code, both of which were duly enacted as local laws.[4]

By express provision of subdivision g of section 3.09 of the administrative code, the county executive is empowered to "remove or suspend any officer or employee appointed by him under the authority of the county charter or this code by written notice of such suspension or removal and the effective date thereof served on such officer or employee personally or by mail". The power of removal or suspension of appointed officers is also expressly granted to the county executive by section 1903 of the Erie County Charter.

Both the administrative code and the charter prescribe

3. The respondents' answer admits that the position of director of the E. J. Meyer Memorial Hospital is in the noncompetitive class of civil service. Respondents do not dispute petitioner's *status* as an honorably discharged member of the armed forces who served therein as a member in time of war. Respondents appear to have abandoned the contention made below that petitioner must have been a resident of New York State at the time of entry into the armed forces, but contend that petitioner would not be entitled to the protection of section 75 of the Civil Service Law because he is an "independent officer."

4. The Erie County Charter was enacted as Erie County Local Law No. 1—1959, was approved by referendum on November 3, 1959, and became effective when filed with the Secretary of State on November 17, 1959.

The Erie County Administrative Code was enacted as Erie County Local Law No. 1 —1960, and became effective on January 1, 1961.

procedures for notice and hearing in the case of removal of officers appointed "for the term or balance thereof of the county executive" where the removal is *"prior* to the end of such term" (emphasis supplied). (Erie County Charter, § 1903; Erie County Administrative Code, § 3.09, subd g.)

Subdivision g of section 3.09 of the Erie County Administrative Code provides: "In the case of those administrative heads * * * appointed for the term or balance thereof of the county executive * * * no removal shall be made *prior to the end of such term* until a hearing, if requested, has been held by the board of review as provided in section nineteen hundred three of article XIX of the county charter and an order of removal has been signed by a majority of the board of review." (Emphasis supplied.)

The corresponding provision in the Erie County Charter (§ 1903) reads: "Any county officer appointed by the county executive for the term or balance thereof of such executive may be removed, *prior to the end of such term,* after written notice from the county executive. Upon written request, such county officer shall be given an opportunity to be heard by a board of review consisting of (1) the county executive, (2) the chairman of the county legislature, and (3) the comptroller. Upon such hearing, removal shall be effected only by a two-thirds vote of such board of review." (Emphasis supplied.)

The county executive's term ended on December 31, 1975. Inasmuch as petitioner's termination on October 4, 1976 was subsequent to and not "prior to the end of such term" petitioner was, by the terms of the very provisions of the charter and administrative code on which he is relying, precluded from claiming their protection.

After December 31, 1975, the last day of the term for which he was appointed, petitioner, by virtue of section 5 of the Public Officers Law, became a "hold-over" in office. As such, he could continue to discharge his duties, but the office was "deemed vacant for the purpose of choosing his successor." *(People ex rel. Mitchell v Sohmer,* 209 NY 151; *Matter of Williams v Bryant,* 57 AD2d 717.) There is nothing in section 5 of the Public Officers Law or in petitioner's status as a hold-over under that statute inconsistent with our interpretation of the foregoing provisions of the charter and administrative code as empowering the county executive to remove petitioner without a hearing at any time after the expiration of the

county executive's term.[5] Thus, petitioner's first cause of action was properly dismissed.

## II

We find no merit to petitioner's second cause of action demanding the protection afforded by section 75 (subd 1, par [b]) of the Civil Service Law to an honorably discharged member of the armed forces "holding a position by permanent appointment or employment in the classified service".

The position of Superintendent of E. J. Meyer Memorial Hospital is concededly listed in the noncompetitive class of classified civil service (Civil Service Law, § 42). However, the appointment, by express provision of section 1602 of the Erie County Charter is not permanent, but "for the term or balance thereof of the county executive making the appointment."

---

5. Section 5 of the Public Officers Law provides that every officer, other than those specifically excepted, shall "hold over and continue to discharge the duties of his office, after the expiration of the term for which he shall have been chosen, until his successor shall be chosen and qualified; but after the expiration of such term, the office shall be deemed vacant for the purpose of choosing his successor."

It seems reasonable to conclude that under section 5 of the Public Officers Law an official holding over can be removed at the will of the appointing authority whether or not such removal occurs prior to or simultaneously with the appointment of his successor. Any construction of section 5 of the Public Officers Law to the contrary, limiting the right of the county executive to remove appointed hold-over officials at will and without a hearing, would be inconsistent with the express provisions of section 1903 of the Erie County Charter and subdivision g of section 3.09 of the Erie County Administrative Code and, arguably, superseded by those provisions.

The Erie County Charter and Administrative Code were adopted pursuant to article 6-A of the County Law, now article 4 of the Municipal Home Rule Law. Under section 323 of the County Law, now section 33 of the Municipal Home Rule Law, the county was specifically authorized to "prepare, adopt, amend or repeal a county charter * * *. Such a county charter shall provide for * * * [the] officers responsible for the performance of the functions, powers and duties of the county * * * and the manner of election or appointment, terms of office, if any, and removal of such officers." (Emphasis supplied.)

Section 103 of the Erie County Charter provides: "Within the limits prescribed in the New York State Municipal Home Rule Law, wherever and whenever any state law, general, special or local in effect, is inconsistent with this charter, such law shall be deemed to the extent of such inconsistency to be superseded by this charter insofar as the county of Erie and its government are affected."

Section 1.02 of the Erie County Administrative Code states that "[w]ithin the limits prescribed by article six-a of the County Law [now article 4 of the Municipal Home Rule Law], wherever and whenever any state law, general, special, or local in effect, is inconsistent with this code, such law shall be deemed to the extent of such inconsistency to be superseded by this code."

As discussed (see Point I), under section 1903 of the Erie County Charter and subdivision g of section 3.09 of the Erie County Administrative Code the county executive is empowered to remove the county hospital superintendent and may do so without a hearing if the removal takes place after the expiration of the county executive's term. Thus, petitioner's status changed, after December 31, 1975, from that of an appointed official with tenure for a definite term to that of an appointee, holding over under section 5 of the Public Officers Law, whose employment could be terminated at the will of the appointing authority. As such, he had no more tenure than a provisional or temporary appointee.

It is well settled that provisional or temporary employees have "no tenure of office and [are] not entitled to any review of [their] discharge under the provisions of section 75 or the former section 22 of the Civil Service Law". *(Matter of Hennessey v Farrell,* 43 Misc 2d 1045, 1048, affd 19 AD2d 698; *Matter of Benon v LaGuardia,* 260 App Div 857, affd 285 NY 560; *Matter of Roberts v Parker,* 52 AD2d 651.)

We hold accordingly that petitioner as a veteran had no right to a section 75 Civil Service Law hearing upon his removal after December 31, 1975. A contrary interpretation of section 75 (subd 1, par [b]) would contravene the express provisions in section 1903 of the Erie County Charter and subdivision g of section 3.09 of the Erie County Administrative Code giving the county executive the power of removal and would also frustrate the apparent legislative purpose in section 33 of the Municipal Home Rule Law which, in granting the county the authority to "prepare, adopt, amend or repeal a county charter," provided that "[s]uch charter shall provide for * * * [the] officers responsible for the performance of the functions, powers and duties of the county * * * and the manner of election or appointment, terms of office, if any, and *removal of such officers."* (Emphasis supplied.)

In view of the foregoing conclusion, remand for a factual determination of whether the office of superintendent may be characterized as an "independent position," which would fall into the judicially created exception to the hearing requirements of section 75 of the Civil Service Law *(Matter of Nolan v Tully,* 52 AD2d 295, mot for lv to app den 40 NY2d 803;

*Matter of O'Day v Yeager,* 308 NY 580; *Matter of Mylod v Graves,* 274 NY 381), is unnecessary.[6]

The order directing a trial pursuant to CPLR 7804 (subd [h]) should be reversed and the second cause of action dismissed.

### III

In his third cause of action petitioner asserts that respondent Regan's "failure to issue a statement [explaining petitioner's termination] has cast a pall and a stigma on petitioner's long career as a hospital administrator, will seriously affect his ability to obtain suitable employment in the future, and has seriously damaged his standing in the community" and that as a result he has been "deprived of his right to 'liberty' and 'property,' without due process of law under the Constitutions of the United States and the State of New York."

Petitioner alleges no contractual or other assurance, express or implied, of his reappointment as hospital superintendent. As an appointee, whose term of office had expired and who was occupying the position only as a hold-over until the county executive filled the vacancy by appointing his successor pursuant to section 5 of the Public Officers Law, petitioner cannot be said to have had "sufficient expectation of continued employment to constitute a protected property interest." (*Bishop v Wood,* 426 US 341, 344; *Board of Regents v Roth,* 408 US 564, 577; *Perry v Sindermann,* 408 US 593. See, also, *Matter of Beneky v Waterfront Comm. of N. Y. Harbor,* 42 NY2d 920; *D'Aiuto v Department of Water Resources,* 51 AD2d 700.)

Nor does the third cause of action allege any cognizable claim of infringement of petitioner's liberty. There is no Federal or State authority for petitioner's contention that his constitutional rights were impaired by the public speculation and attention resulting from his termination and respondent Regan's failure to issue a statement explaining it. On the contrary, the Supreme Court has stated clearly that in cases

6. Arguably, the broad powers conferred upon the Superintendent of E. J. Meyer Memorial Hospital by operation of section 129-a of the General Municipal Law, section 1602 of the Erie County Charter, and section 16.02 of the Erie County Administrative Code (see Point IV, *infra*), establish that as a matter of law the office of superintendent is an independent position exempt from the hearing requirements of section 75 of the Civil Service Law.

involving the discharge of public employees, the impairment of "liberty" results not from the failure to rehire the employee but from the stigma attached to the *public disclosure* of the reasons for the termination which might "seriously damage his standings and associations in his community" such as, "for example, that he had been guilty of dishonesty, or immorality." *(Board of Regents v Roth, supra,* p 573.) In *Bishop v Wood (supra,* p 348) the court stated:

"In *Board of Regents v. Roth,* 408 U.S. 564, we recognized that the nonretention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far 'to suggest that a person is deprived of "liberty" when he simply is not rehired in one job but remains as free as before to seek another.' *Id.,* at 575. This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge.

"In this case the asserted reasons for the City Manager's decision were communicated orally to the petitioner in private and also were stated in writing in answer to interrogatories after this litigation commenced. *Since the former communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was thereby impaired."* (Emphasis supplied.) (See, also, *Odenz v Director, Creedmoor Psychiatric Center,* 51 AD2d 584; *Beneky v Waterfront Comm. of N. Y. Harbor, supra; D'Aiuto v Department of Water Resources, supra.)*

Here the reasons for petitioner's termination were communicated to him privately by letter. For this reason alone, his claim is without merit. *(Bishop v Wood, supra.)* Furthermore, the reasons given for his dismissal were his "failure to take * * * vigorous initiative" and his apparent inability to "discharge the leadership and management responsibilities required": clearly not such reasons as would impair his "good name, reputation, honor, or integrity". *(Board of Regents v Roth, supra,* p 573.) Indeed, no claim is made that the reasons given for petitioner's termination were stigmatic.

Accordingly, there was no basis for the court's direction of an administrative hearing. The order directing such hearing should be reversed and the motion to dismiss granted.

IV

Petitioner's fourth cause of action, in which he claims he was discharged in bad faith for constitutionally impermissible partisan political reasons *(Elrod v Burns,* 427 US 347), should also be dismissed.

In *Elrod v Burns,* the practice of patronage dismissals of public employees was held to be restrictive of political belief and association and thus violative of the First and Fourteenth Amendments. Policymaking positions were excepted from this protection in order to insure effective implementation of the policies of the party in office. The Supreme Court stated (p 368): "[While] patronage dismissals severely restrict political belief and association * * * [t]here is also a need to insure that policies which the electorate has sanctioned are effectively implemented. That interest can be fully satisfied by limiting patronage dismissals to policymaking positions."

"In determining whether an employee occupies a policymaking position, consideration should * * * be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals. *(Elrod v Burns,* p 372.)*

We hold that the position of Superintendent of E. J. Meyer Memorial Hospital is a policymaking position. By operation of section 129-a of the General Municipal Law,[7] section 1602 of the Erie County Charter,[8] and section 16.02 of the Erie County Administrative Code,[9] the policymaking responsibilities ordinarily vested in the board of managers (General Municipal Law, § 128), are vested in the superintendent. As a result, numerous duties assigned to and powers conferred upon the

---

7. "In the county of Erie * * * [the] charter may provide that the powers of [the county hospital] board of managers may be advisory only in which event the powers now granted by statute to such board shall be vested in the superintendent." (General Municipal Law, § 129-a.)

8. Section 1602 of the Erie County Charter, in addition to providing for the appointment of the superintendent by the county executive for the term of the county executive, further provides that "the superintendent shall have charge and supervision of all county hospitals and *shall exercise all powers and duties of a hospital board of managers* * * *. There shall be a hospital advisory board * * * [which] shall at the request of the superintendent, and may on its own initiative, advise on matters relating to county hospital operation and improvement." (Emphasis supplied.)

9. Section 16.02 of the Erie County Administrative Code states that the powers and duties of the superintendent of the county hospital *"shall include but shall not be limited to any power or duty conferred or imposed upon a hospital board of managers and a hospital superintendent by the General Municipal Law or other applicable law."* (Emphasis supplied.)

superintendent are policymaking in nature. He is empowered to "make such rules and regulations as may seem to [him] necessary for carrying into effect the purposes of such hospital * * * [e]rect all necessary buildings; make all necessary improvements and repairs and alter any existing buildings, for the use of said hospital * * * and * * * [f]ix the * * * number and salaries of all * * * employees." He is responsible for "the general superintendence, management and control of the said hospital * * * and of all matters relating to the government, discipline, contracts and fiscal concerns thereof" and "shall appoint and may at pleasure remove resident, visiting and consulting physicians and surgeons; and shall establish rules and regulations governing the service thereof." (General Municipal Law, § 128.) The responsibilities are broad in scope and entail formulation and implementation of policies for the government of the hospital. They include the power to make rules and regulations to effectuate the purposes of the hospital, and the responsibility for the general superintendence, management, and control of the hospital.

Ordinarily, a board of managers of a public general hospital is appointed by the mayor or other official for five-year terms independent of the term of the appointing official. (General Municipal Law, § 127.) The board then appoints a superintendent who is the chief executive officer and is under the control of the board. (General Municipal Law, §§ 128, 129.)

However, as a result of the merging of the functions of the board of managers and the superintendent by operation of section 129-a of the General Municipal Law and the Erie County Charter and Administrative Code, the Superintendent of E. J. Meyer Memorial Hospital is directly responsible to the appointing officer, the county executive. Of the more than 20 administrative or department head positions appointed by the Erie County Executive, only three, of which Superintendent of the County Hospital is one, have terms which run concurrently with that of the county executive (Erie County Charter, §§ 501, 1602, and 1603). The special treatment of the position, which brings it directly under the control of the appointing officer and limits its term to that of the appointing officer, indicates a determination by the Erie County Legislature, sanctioned by the electorate,[10] that it is a position deeply involved in the implementation of the policies of the adminis-

---

10. The Erie County Charter was enacted as Erie County Local Law No. 1—1959, and was approved by referendum on November 3, 1959.

tration. Thus the exception of the position of superintendent from the general protection provided by *Elrod v Burns* (427 US 347, *supra)* seems particularly appropriate.

The order should, therefore, be modified, on the law, and the motion to dismiss granted as to the second, third, and fourth causes of action, and otherwise affirmed, and the petition dismissed.

SIMONS, J. P., DENMAN and WITMER, JJ., concur; GOLDMAN, J., not participating.

Order modified, on the law, in accordance with opinion by HANCOCK, JR., J., and otherwise affirmed, and petition dismissed, without costs.