In the Matter of BRIAN MCBRIDE, Respondent, v JAMES GRIF-
FIN, as Mayor of the City of Buffalo, et al., Appellants.

Fourth Department, May 26, 1978

APPEARANCES OF COUNSEL

*Joseph P. McNamara, Corporation Counsel (Carl Tronolone* of counsel), for appellants.

*Collins, Collins & Di Nardo (Joseph Di Nardo* of counsel), for respondent.

### OPINION OF THE COURT

HANCOCK, JR., J.

Respondents appeal by permission from an order temporarily enjoining them from filling the position of Division Director of Drug Abuse Services and directing an evidentiary hearing in connection with petitioner's CPLR article 78 proceeding for reinstatement to said position.

Petitioner was appointed Director of Drug Abuse Services of the City of Buffalo on February 24, 1975. On January 4, 1978, after a change in administration had occurred as the result of the election of respondent Griffin as Mayor in November, 1977, petitioner was advised by the respondent Commissioner of Human Resources that his services had been terminated. The reason given for the discharge was not dissatisfaction with his services but that the commissioner wanted to "start with fresh faces and new, innovative approaches." (The services of the other directors in the Department of Human Resources were also terminated at approximately the same time for the same reason.)

On January 6, 1978, petitioner, by order to show cause, commenced this proceeding seeking his reinstatement, alleging: (1) that as a provisional employee he could not be re-

moved except for "incompetency or misconduct shown after a hearing upon stated charges" pursuant to section 75 of the Civil Service Law; (2) that his discharge was a breach of the collective bargaining agreement between the City of Buffalo and the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO; and (3) that he was discharged for political purposes in violation of his rights under the First and Fourteenth Amendments of the United States Constitution *(Elrod v Burns,* 427 US 347).

■ ■ We concur with Special Term's holdings that, as a provisional employee, petitioner could not claim the protection of section 75 of the Civil Service Law and that the collective bargaining agreement of AFSCME, AFL-CIO afforded petitioner no remedy because he was not a member of the bargaining unit.

However, Special Term's holding that factual questions were presented as to petitioner's claim of unlawful discharge for political reasons under the doctrine of *Elrod v Burns (supra)* requires an examination of the nature of petitioner's position. The constitutional prohibition against patronage dismissals announced in *Elrod* is limited to nonpolicymaking positions inasmuch as persons holding such positions "usually have only limited responsibility and are therefore not in a position to thwart the goals of the in-party. No clear line can be drawn between policymaking and nonpolicymaking positions. While nonpolicymaking individuals usually have limited responsibility, that is not to say that one with a number of responsibilities is necessarily in a policymaking position. The nature of the responsibilities is critical * * * An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position." *(Elrod v Burns, supra,* pp 367-368.)

The record establishes that petitioner holds a high-level administrative and executive position in the Buffalo city government. Petitioner, as Director of the Division of Drug Abuse Services, is charged with the responsibility of coordinating and administering all of the drug programs in the City of Buffalo. As one of the division directors in the Department of Human Resources (Buffalo City Charter, art 14-A), he holds a line position in the administrative chain of command under the Commissioner of Human Resources who by charter has the power to appoint the division directors and to remove them at pleasure (Buffalo City Charter, § 71). A division

director of the Department of Human Resources is empowered and commanded by the charter to "direct and administer the affairs of the division", and to "discharge any and all duties needed or necessary to effectuate the purposes of each division and such other duties conferred by this article, ordinance or general law", and to be a "deput[y] of the commissioner of human resources." (Buffalo City Charter, § 285.6.) Additionally, section 71 of the Buffalo Charter provides that the heads of divisions of any department "shall be deemed deputies" and specifies further that, as deputies, division heads are *"authorized to act generally for and in place of their principals."* (Buffalo City Charter, § 71; emphasis supplied.) Petitioner, when acting under these provisions, would have the broad administrative and executive policymaking responsibility of his department head, the Commissioner of Human Resources.

By charter provision (Buffalo City Charter, § 285.12) the Director of Drug Abuse Services is empowered and commanded to "coordinate and administer any and all programs developed by the narcotic guidance council of the city * * * and * * * other programs * * * to control the use of addictive substances; to educate the public of the effect and danger of such use; and to rehabilitate persons addicted or likely to be addicted thereto."

Further, the charter provides for the creation of a Committee of Drug Abuse Services (Buffalo City Charter, § 285.12a) which, among other things, is charged with the responsibility of making recommendations to the Director of Drug Abuse Services and to the Mayor, the Common Council, and the Commissioner of Human Resources on various subjects including "institution of programs to control the use and abuse of addictive substances" and "treatment and rehabilitation of persons using and abusing addictive substances". (Buffalo City Charter, § 285.12b.) It seems implicit in the designation of the Director of Drug Abuse Services as one of the recipients of such recommendations that, as the chief administrator of the drug programs in the city, he is intended to play a significant role in the rejection of the recommendations or in their acceptance and implementation.

Petitioner's duties are also defined in the official job description as follows: "Chief Administrative and Professional Position in the Division; Administers all aspects of multi-drug abuse service program; coordinates all program elements; executes all program changes * * * supervises all directors of

program units within the Division." From the several letters appended to the petition, it is apparent that petitioner, in his role as the head of his division and the chief municipal officer in charge of drug abuse, was responsible, *inter alia,* for conceiving, establishing and developing an entirely new "community-based drug and alcohol program" in various parts of the city, for establishing new "job development and education counseling and assistance" programs and for securing grants and Federal reimbursement for such purposes.

In *Matter of Ause v Regan* (59 AD2d 317) we held that the Superintendent of the Erie County E. J. Meyer Memorial Hospital held a policymaking position as the term is used in *Elrod v Burns* (427 US 347, *supra).* Here, as in *Ause,* the position in question carries responsibilities which are "broad in scope and entail formulation and implementation of policies". *(Matter of Ause v Regan, supra,* p 327.) Furthermore, the provision of the Buffalo City Charter that a division director is to be appointed by the department head and is subject to removal by him at pleasure (Buffalo City Charter, § 71) is of some significance as an indication that the drafters of the Buffalo City Charter considered persons holding the position of division director to be involved in the implementation of the policies of the administration. (See *Matter of Ause v Regan, supra,* p 327.)

The fact that the position of Director of Drug Abuse Services has a civil service classification of provisional does not support petitioner's contention that the position is not policymaking. It is noted that the provisional classification is a temporary one and that the city has had pending for some time an application for reclassification of the position under section 41 (subd 1, par [b]) of the Civil Service Law which provides that "the deputies of principal executive officers authorized by law to act generally for and in place of their principals" shall be in the exempt class.

█ We hold, therefore, following our decision in *Matter of Ause v Regan (supra),* that petitioner holds a policymaking position as the term is defined in *Elrod v Burns (supra).* (See, also, *Rivera Morales v Benitez de Rexach,* 541 F2d 882; *Nunnery v Barber,* 503 F2d 1349, cert den 420 US 1005; *Duff v Sherlock,* 432 F Supp 423; *Gould v Walker,* 356 F Supp 421.) We need not reach the question of whether there is a sufficient showing in the petition to raise a question of fact as to the allegation that the discharge was politically motivated.

The order should be reversed and the petition dismissed.

MARSH, P. J., SIMONS, DILLON and DENMAN, JJ., concur.

Order unanimously reversed, without costs, and petition dismissed.