OPINION OF THE COURT
Edward J. Greenfield, J.
Defendant Manhattan & Bronx Surface Transit Operating Authority (MABSTOA) moves for an order dismissing the complaint of the plaintiffs Transit Supervisors Organization, Transit Supervisors Benevolent Association, and several officers of the foregoing organization pursuant to CPLR 3211 (subd [a], pars 2, 7) upon the ground that the court lacks subject matter jurisdiction and upon the ground that the complaint does not set forth viable causes of action.
Plaintiffs commenced this action to enjoin MABSTOA from promoting, demoting, or laying off any supervisors in violation of section 6 of article V of the New York State Constitution and sections 45, 52, 75 and 80 of the New York Civil Service Law.
In their complaint, plaintiffs allege four causes of action, each will be addressed seriatim.
MABSTOA, a public benefit corporation (General Construction Law, § 65, subd b, par 3; § 66, subd 4), was established in 1962 as a subsidiary of the Transit Authority (TA) to operate the facilities of the Fifth Avenue Coach Co., Surface Transit Inc. and the New York Omnibus Corp. MABSTOA operates through a lease agreement with New York City, which had acquired the facilities of the three companies through condemnation proceedings. MABSTOA operates the surface transit omnibus lines owned by the City of New York and the TA.
*8 Defendant has since 1979 allegedly promoted employees to supervisory positions without competitive examinations. MABSTOA is also alleged to have laid off supervisory employees without regard to seniority or sections 75 and 80 of the New York Civil Service Law since 1979.
Plaintiffs in their first cause of action argue that the foregoing practices by MABSTOA violate section 6 of article V of the New York State Constitution which provides in part that: “Appointments and promotions in the civil service of the state and all of the civil divisions thereof * * * shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive”.
MABSTOA contends that it is not governed by the foregoing provision of the Constitution as it is a public benefit corporation, which “[although created by the State and subject to dissolution by the State” is “independent and autonomous, deliberately designed to be able to function with a freedom and flexibility not permitted to an ordinary State board, department or commission.” (Matter of Plumbing, Heating, Piping & Air Conditioning Contrs. Assn. v New York State Thruway Auth., 5 NY2d 420, 423.)
The fact that MABSTOA “is an instrumentality of the State, and as such, engages in operations which are fundamentally governmental in nature does not inflexibly mandate a conclusion that it is the State or one of its agencies” for the purpose of section 6 of article V of the State Constitution. (Grace & Co. u State Univ. Constr. Fund, 44 NY2d 84, 88.)
However, it is conceded that MABSTOA is a subsidiary of the Transit Authority which is itself subject to the constraints of the merit and fitness standards of section 6 of article V of the New York Constitution (Matter of Mena v D'Ambrose, 44 NY2d 428, 433; see, also, Public Authorities Law, § 1210). Thus, the cavalier assertion that merely because the entity is a public benefit corporation it is not subject to section 6 of article V of the New York Constitution is rejected.
The issue thus presented is whether MABSTOA is to be considered the State or a civil division thereof for the purposes of section 6 of article V of the New York Constitu *9 tion. In order to do this, the court must weigh all its powers, functions and obligations and the statute sought to be invoked (Matter of New York Post Corp. v Moses, 10 NY2d 199; Matter of Dormitory Auth. of State of N. Y. [Span Elec. Corp.], 18 NY2d 114). “[I]f the statutes creating [MABSTOA] and empowering it to [perform] * * * imbue it with such a degree of identity as to be considered an integral part of the State qua State, the provisions of [NY Const, art V, § 6] are applicable to [it] as it would be [to] an agency of the State.” (Grace & Co. v State Univ. Constr. Fund, 44 NY2d 84, 88, supra.)
MABSTOA is specifically created in subdivision 2 of section 1203-a of the Public Authorities Law as a subsidiary corporation of the Transit Authority. The directors of the subsidiary are the chairman and directors of the TA or their successors (Public Authorities Law, § 1203-a, subd 2). MABSTOA is given all the powers vested in the TA (Public Authorities Law, § 1203-a, subd 3; § 1204) including the power to sue and be sued (Public Authorities Law, § 1204, subd 1); to have a seal (Public Authorities Law, § 1204, subd 2); to acquire, hold and use equipment (Public Authorities Law, § 1204, subd 3); to acquire real property by purchase or condemnation (Public Authorities Law, § 1204, subd 3-a); to receive grants of property, money or assistance from any person, government or agency (Public Authorities Law, § 1204, subd 3-b); to make rules and regulations for its organization and management (Public Authorities Law, § 1204, subd 4); to make rules for the regulation of its transit facilities (Public Authorities Law, § 1204, subd 5-a); to retain counsel, engineers and private consultants for technical services (Public Authorities Law, § 1204, subd 7); to use officers and employees of the city with its consent and to pay the agreed-upon compensation for them (Public Authorities Law, § 1204, subd 10); to make contracts, leases and conveyances including the power to contract with other transit facilities for combined fares and division of such fares (Public Authorities Law, § 1204, subd 11); to surrender to the city property no longer required by it (Public Authorities Law, § 1204, subd 12); to rent space and grant concessions on or in any of its facilities (Public Authorities Law, § 1204, subd 13); to *10 erect signs or to sell the right to do so (Public Authorities Law, § 1204, subd 13-a); to exercise all requisite and necessary authority to manage control and direct the maintenance and operation of the transit facilities transferred to it and to extend, modify or curtail its routes (giving notice to the Board of Estimate at least 30 days prior to any change and upon request conducting a public hearing) (Public Authorities Law, § 1204, subd 15); to do all things necessary to carry out its purposes (Public Authorities Law, § 1204, subd 17) and to submit copies of specified reports to the Mayor. (Public Authorities Law, § 1204, subd 18.)
Specifically omitted from these powers but which are powers delegated to the TA are the power to appoint officers and assign duties and powers to them (Public Authorities Law, § 1204, subd 5); to construct new transit facilities (Public Authorities Law, § 1204, subd 8); to construct, maintain and operate facilities for parking cars in the vicinity of its transit facilities (Public Authorities Law, § 1204, subd 9); to make plans, surveys and studies of transit facilities in the city (Public Authorities Law, § 1204, subd 14); and to provide and maintain a transit police department (Public Authorities Law, § 1204, subd 16).
Additionally, MABSTOA is given the power to operate the bus lines transferred to it by the city (Public Authorities Law, § 1203-a, subd 3, par [a]); to appoint officers and employees and to fix their compensation which officers and employees shall not for any purpose become employees of the city or the TA or acquire civil service status (Public Authorities Law, § 1203-a, subd 3, par [b]); to improve, maintain and operate its buildings and facilities (Public Authorities Law, § 1203-a, subd 3, par [c]); to use officers, employees, agents and facilities of the TA with its consent and to reimburse the TA therefor (Public Authorities Law, § 1203-a, subd 3, par [d]); to utilize business methods and efficient procedures to promote safety and convenience of the traveling public (Public Authorities Law, § 1203-a, subd 3, par [e]); and to operate bus lines operated in New York City prior to February 28, 1962 and as may be *11 modified by the Board of Estimate after notice and a public hearing (Public Authorities Law, § 1203-a, subd 3, par [f]).
The initial working capital of MABSTOA was advanced by the city from existing city funds as a loan and capital costs not charged by the TA as operating costs are to be paid by the city (Public Authorities Law, § 1203-a, subd 5, pars [c], [d]); MABSTOA is entitled “to utilize the officers, employees, agents, facilities and services of the city on the same terms and conditions as are applicable to or provided to the transit authority”. (Public Authorities Law, § 1203-a, subd 5, par [b].) To the extent that capital costs are incurred in the name of MABSTOA which are payable by the city, no project to be financed by such funds estimated to involve an expense in excess of one million dollars shall be commenced unless the Mayor and the Board of Estimate of the city are notified in advance in writing, and no such project may be commenced if the Mayor or the Board of Estimate find it incompatible with sound planning for the development or redevelopment of the city (Public Authorities Law, § 1203-a, subd 5, par [c]).
The law provides for reduced fares for various classes of users upon designation by the Mayor (Public Authorities Law, § 1203-a, subd 7) and the same tax exemptions given to any city agency (Public Authorities Law, § 1203-a, subd 4; § 1207-g) and exemption from taxation by the State (Public Authorities Law, § 1216). MABSTOA must publish its accountings in the City Record and make its deposits subject to the audit of the Comptroller. (Public Authorities Law, § 1203-a, subd 6, which makes § 1208 applicable to MABSTOA.)
MABSTOA is not, even in form, an autonomous, distinct or independent entity. It is a subsidiary of the TA, managed and directed by the chairman and members of the TA (Public Authorities Law, § 1203-a, subds 1, 2) who are appointed by the Governor with the advice and consent of the State Senate and, in the case of four of the members, upon written recommendations of the Mayor of the City of New York (Public Authorities Law, § 1263, subd 1, par [a]). MABSTOA employees are covered under workers’ compensation (Workers’ Compensation Law, § 50, subd 4) by the provisions of section 1215 of the Public Authorities *12 Law which provides in pertinent part that “[f]or the purposes of * * * the workmen’s compensation law, the term other political subdivision of the state shall be deemed to refer to and include the authority”. Employees are also expressly specified to be “public employees” for the purposes of the State’s Taylor Law (Civil Service Law, § 201). MABSTOA is defined as an agency of the State for the purposes of subdivision 1 of section 102 of the State Administrative Procedure Act and with respect to the compilation of rules and regulations (Executive Law, § 102, subd 1, par a). MABSTOA is not exempted from the definition of “employer” for the purposes of the Human Rights Law (Executive Law, § 290 et seq.).
Considering and weighing all the above powers, functions and obligations, it is apparent that MABSTOA does not enjoy a separate existence; it transacts business in, of and for the City of New York and is financed by the city and the Transit Authority.
Accordingly, MABSTOA does not exist separate and apart from the State and City of New York and its employees are controlled and supervised by government employees (Matter of Conlin v Aiello, 64 AD2d 921, affd 49 NY2d 713; Matter of Westchester County Civ. Serv. Employees Assn. v Cimino, 58 AD2d 869, affd 44 NY2d 985). Thus, MABSTOA is a civil division of the State within the meaning of section 6 of article V of the New York State Constitution.
Accordingly, the motion to dismiss the first cause of action is denied because this court concludes that MABSTOA must comply with the provision of section 6 of article V of the State Constitution with respect to the hiring and firing of employees.
The second cause of action alleges that the promotions and layoffs set forth in the first cause of action are in violation of the Civil Service Law. However, section 1203-a (subd 3, par [b]) of the Public Authorities Law specifically provides that “officers and employees [appointed to positions] shall not become, for any purpose, employees of the city or of the transit authority and shall not acquire civil service status”.
*13 Although MABSTOA is a subdivision of the State, its employees are not municipal employees. Nor does it necessarily follow that because MABSTOA must comply with the merit and fitness requirements of section 6 of article V of the State Constitution that it must also comply with the seniority provisions of the Civil Service Law (Civil Service Law, § 80) when laying off employees or removing employees for cause (Civil Service Law, § 75 [except to the extent necessary to comply with minimal due process standards]).
The Legislature has, in subdivision 3 of section 1203-a of the Public Authorities Law, chosen to exempt MABSTOA from the provisions of the Civil Service Law and accordingly, the second cause of action should be dismissed.
The third cause of action sets forth a claim of estoppel. Individual plaintiffs argue that their employment commenced and continued in reliance upon the opportunities for advancement by competitive examinations. Therefore, it is argued that defendant should be estopped from changing the procedures for advancement.
Defendant argues that even if under prior practice it made appointments and promotions based upon competitive examination and subsequently chose a new procedure for selection and advancement of employees, it may not be estopped from making such change. It avers that the method used for determining which employees are to be promoted or demoted is a “ Term * * * [or] condition * * * of employment’ ” (Civil Service Law, § 201, subd 4; § 204, subds 2, 3) which should be taken to the Public Employment Relations Board (PERB) (Civil Service Law, § 200 et seq.) or addressed in a grievance procedure under the collective bargaining agreement (collective bargaining agreement dated July 1, 1978 [art 7]). Defendant further contends that the exclusive powers given to PERB (Civil Service Law, § 205, subd 5, par [d]) to address such complaints initially precludes this court from assuming jurisdiction over such dispute.
Plaintiff contends that recent PERB rulings show that such matters are neither appropriate for collective bargaining nor subject to regulation under the Taylor Law (Civil Service Law, art 14).
*14 The public employer’s power to bargain collectively is encouraged under the Taylor Law and is broad. It is not, however, unlimited. “Although a public employer is free to negotiate any matter in controversy, whether or not it involves a term or condition of employment subject to mandatory bargaining, it may do so only in the absence of ‘plain and clear’ prohibitions in statute or controlling decision law, or restrictive public policy”. (Matter of Board of Educ. v Yonkers Federation of Teachers, 40 NY2d 268, 273.)
The public policy of this State that hiring practice of public employers be on the basis of merit and fitness is set forth in section 6 of article V of the State’s Constitution. Recent case law states that “nowhere in the Taylor Law, nor in its underlying policies, is PERB vested with the general power to prohibit governmental officials from violating express statutory provisions.” (Matter of Zuckerman v Board of Educ., 44 NY2d 336, 343.)
In Zuckerman, a case strikingly similar to this one, plaintiffs alleged that the New York City Board of Education, in violation of statute and constitutional directives (NY Const, art V, § 6) discharged personnel selected from eligible lists and replaced them with persons to whom the board had given certificates of competence. The court reviewed the jurisdiction of PERB and noted that “PERB’s jurisdiction encompasses only those matters specifically covered by the Taylor Law.” (44 NY2d; supra, at p 343.) The court further noted (p 343) that PERB itself suggested that “where the * * * terms of a statute govern the actions of an employer the matter may be without the Taylor Law (see City of Binghamton & Binghamton Firefighters, Local 729, I.A.F.F., AFL-CIO, 9 PERB 3026).” No lesser standard could be imposed for constitutional provisions.
Moreover, “It has never been the law in this State that the clear and unambiguous wording of a statute or constitutional provision may be overlooked entirely when it is seemingly inconsistent with the practice and usage of those charged with implementing the laws”. (Anderson v Regan, 53 NY2d 356, 362.)
Thus, this court is not ousted of jurisdiction and the matter may proceed to be litigated in this court (see Bren *15 nan v New York City Housing Auth., 72 AD2d 410). Accordingly, the motion to dismiss the third cause of action is denied.
The fourth cause of action asserts that as MABSTOA supervisory employees are indistinguishable in function from Transit Authority employees and as the Transit Authority positions are filled pursuant to sections 75 and 80 of the Civil Service Law, MABSTOA is violating the due process and equal protection clauses of the New York and United States Constitutions by failing to similarly follow the Civil Service Law.
MABSTOA contends that the distinction in treatment is not violative of the due process and equal protection clauses as legislation creating such unequal treatment is permissible when the law is related to a valid State interest (see Koch v Yunich, 533 F2d 80).
That State interest is set forth in the enabling legislation which created MABSTOA. MABSTOA, although now nearly 20 years old, was created for the purpose of operating for a temporary period omnibus lines acquired by the city “until the said omnibus lines shall be sold or otherwise disposed of to a private or public operation.” (Public Authorities Law, § 1203-a, subd 2.)
The purposes for which the Transit Authority was created are substantially different. The TA was created to acquire and run, on an ongoing basis, the facilities operated by the New York City Board of Transportation (Public Authorities Law, § 1202). Employees of the Board of Transportation were city employees and fully subject to all rights and obligations of the Civil Service Law. On the other hand, the employees of the three private corporations which were acquired to be operated by MABSTOA were never subject to the Civil Service Law.
Similar job titles held by MABSTOA and TA employees while represented by the same union have separate and different contracts.
Thus, the different history and purposes of MABSTOA and the TA were taken into account by the Legislature in making the former a subsidiary of the latter (Public Authorities Law, § 1203-a) so that for the purposes of later *16 sale or other disposal, MABSTOA would retain a separate identity.
Equal protection does not require that things which are different in fact be treated as though they are the same (Tigner v Texas, 310 US 141, 147; cf. Weissman v Evans, 82 AD2d 441). The objective of later sale of MABSTOA facilities provides a rational basis for the legislative enactment here challenged. “The requirements of due process are satisfied as long as the challenged measure is reasonably related to the attainment of a permissible objective * * * Similarly, the standards of equal protection are met if a classification, or a distinction among classes, has some reasonable basis” (Matter of Bauch v City of New York, 21 NY2d 599, 606-607).
Here, the existence of such a reasonable relationship and basis is apparent. Accordingly, the motion to dismiss the fourth cause of action is granted.
In accordance with the foregoing, defendants’ motion to dismiss the complaint is granted to the extent of dismissing the second and fourth causes of action and is otherwise denied.