In the Matter of CARL BERGAMINI, Respondent, v MANHAT-TAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY et al., Appellants.

First Department, June 21, 1983

APPEARANCES OF COUNSEL

*Carla Lowenheim* of counsel (*Richard K. Bernard,* attorney), for appellants.

*Eugene M. Kaufman* for respondent.

OPINION OF THE COURT

SANDLER, J.

Petitioner was employed by Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) as a chemist on or about September 3, 1973. On April 1, 1980 petitioner was promoted, on a one-year probationary basis, to the position of senior chemist. In that capacity he was assigned to work on an experiment with a fuel additive. The experiment was prematurely terminated when, alleging insufficient notice, the supplier failed to provide on a timely basis the required quantity of additive.

Thereafter William G. Stead, chief of staff of both appellants, wrote to petitioner and to a supervisor, Mr. Novak, informing them that their performance in connection with the test, and particularly that of petitioner, was unacceptable. Petitioner promptly responded in a memorandum, described as an appeal of notification of unacceptable performance, in which he denied responsibility for the failure, urged that he had repeatedly informed his superiors, Mr. Novak and Mr. Bulone, that additional personnel were required to be deployed for supervision of the test, that these requests were not adequately responded to, and that responsibility for the failure of the test was attributable to the refusal of his superiors to provide the requested personnel.

Several weeks later petitioner received a memorandum from Mr. Bulone, one of those he had specifically criticized, directing his appearance before a Mr. Harrison, a labor relations specialist, designated as hearing officer, on certain charges relating to the test, charges that alleged lack of judgment, incompetence and "failure to comply". The charges were signed both by Mr. Bulone and Mr. Harrison.

After an interview, Mr. Harrison dismissed Mr. Bergamini, with the right to work pending appeal, concluding that he had failed to convey to his superiors the seriousness of the situation which caused the experiment to be aborted, but noting that petitioner had thought that he had done the correct thing in reporting to them. Mr. Bulone concurred with this determination and informed petitioner that his continued employment would be considered probationary, commencing January 26, 1981 and continuing through April 26, 1981, during which period he would be expected to improve his professional performance, including correction of "your personal attitudinal mannerisms and professional interaction with your superiors and co-workers."

Following petitioner's refusal to acknowledge this determination without speaking to his counsel, and after an informal meeting with a Mr. Robinson, director of labor relations, the latter, in a memorandum dated March 3, 1981, determined to rescind the previous dismissal and return petitioner to his prior title of chemist. Two days

later, without any disclosed intervening event, Mr. Robinson terminated petitioner's employment.

In his petition, which alleges, in addition to the foregoing, that petitioner became a tenured employee one year after his employment, petitioner claims that his constitutional rights were violated because he was dismissed without a constitutionally adequate hearing, and seeks reinstatement to his employment with MABSTOA and related relief.

Appellants cross-moved to dismiss pursuant to CPLR 3211 (subd [a], par 7), alleging that the petitioner failed to state a cause of action, and alternatively requesting an opportunity to answer pursuant to CPLR 7804 (subd [f]) if the cross motion was denied. In a supporting affirmation counsel for appellants argued that section 1203-a of the Public Authorities Law specifically exempted employees of MABSTOA from civil service status, that therefore MABSTOA was entitled as of right to dismiss its employees at will and without a hearing, and that in any event, petitioner received a constitutionally adequate hearing.

Special Term denied the cross motion to dismiss, and also denied the alternative application for leave to submit an answer, directing a trial pursuant to CPLR 7804 (subd [h]) "on the question, whether his performance was in any manner unsatisfactory and the closely related issues whether he had any role in the depletion of the supply of test material." Special Term expressed the view that there was a significant possibility that dismissal resulted from an effort of his superiors to protect themselves at petitioner's expense. We modify to the extent of reversing the direction for an immediate trial and extending to MABSTOA the requested opportunity to file an answer. We also dismiss the petition with regard to the New York City Transit Authority which appears not to have had an employment relationship with petitioner.

As pertinent to the allegations of the petition, the basic constitutional rules governing the right of a public employee to a pretermination hearing consistent with due process requirements were set forth by the United States Supreme Court in a group of decisions commencing with *Board of Regents v Roth* (408 US 564) and *Perry v Sinder-*

*mann* (408 US 593). (See, also, *Arnett v Kennedy,* 416 US 134; *Bishop v Wood,* 426 US 341; *Codd v Velger,* 429 US 624.) In substance, the Supreme Court has held that a public employee may not be dismissed without a pretermination hearing consistent with due process if the employee has a "property right" in his employment. A property interest was defined as "a legitimate claim of entitlement" to a benefit *(Board of Regents v Roth, supra,* p 577), a claim which arises if the conditions of the employment are such that the public employee may not be terminated except for cause. (See *Bishop v Wood, supra.)*

As further developed by the Supreme Court, the existence of a property interest is determined by reference to sources other than the United States Constitution, such as State law, and may arise from statute, regulation or contract, express or implied. It may arise from "rules or mutually explicit understandings that support his claim of entitlement to the benefit". (See *Perry v Sindermann, supra,* p 601.)

In determining whether the petition sets forth a legally sufficient claim of property interest or *de facto* tenure under the law of this State, we note, of course, that, as contended by appellants, section 1203-a of the Public Authorities Law explicitly exempts employees in petitioner's former position from civil service status. Nor does the petition allege any other applicable statute limiting MABSTOA's right to terminate his employment at will, nor any rule or regulation so providing. Neither does the petition allege that petitioner was employed under a contract that set forth a fixed term of employment or any limitation on the right to dismiss. It is, of course, a well-established rule in this State that such contracts of employment are deemed terminable at will by either party. *(Murphy v American Home Prods. Corp.,* 58 NY2d 293; *Watson v Gugino,* 204 NY 535; *Parker v Borock,* 5 NY2d 156; *Haines v City of New York,* 41 NY2d 769; see, also, *Quinn v Syracuse Model Neighborhood Corp.,* 613 F2d 438.)

The presence of these factors have consistently resulted in this State in judicial rejection of claims by public employees that their constitutional rights were violated by dismissal without a pretermination hearing. *(Matter of*

*Stanziale v Executive Dept., Off. of Gen. Servs.,* 55 NY2d 735; *Matter of Holbrook v State Ins. Fund,* 54 NY2d 892; *Matter of De Lucia v Lefkowitz,* 62 AD2d 674, affd *sub nom. Matter of Hopkins v Lefkowitz,* 48 NY2d 901; *Matter of Carter v Murphy,* 80 AD2d 960; *Matter of Rivera v Beekman,* 86 AD2d 1.)

Notwithstanding this uninterrupted line of authority, we think it appropriate to observe that the petition appears to state a stronger claim to a constitutionally protected property interest in a public employment than any that have been previously addressed in the appellate decisions in this State.

Petitioner had been employed for some eight years before his dismissal. (Cf. *Perry v Sindermann,* 408 US 593, 602, *supra.*) More important, however, is the circumstance that petitioner had been appointed a senior chemist on a one-year probationary basis. From this designation there is at least a possible implication that his previous status involved a legitimate expectation that he would not be terminated without cause. This possibility would appear to be buttressed to some extent by the circumstance that a preliminary determination had been made to return petitioner to his prior status as chemist. Indeed, it is a possible inference from the events leading up to his dismissal that appellants understood that petitioner could not be terminated except for cause.

In short, the situation is comparable to the "*de facto* tenure" in *Perry v Sindermann (supra)*, which the Supreme Court found to state a legally sufficient claim to a constitutionally protected property interest. However, as the Supreme Court made clear in the several authorities referred to earlier, the existence of such a property interest is normally to be determined by relevant State law, and the test to be applied is whether under State law a public employee is terminable at will or may be terminated for cause.

The recent decision of the New York Court of Appeals in *Murphy v American Home Prods. Corp. (supra)*, strongly reaffirming the traditional New York terminable-at-will rule, leaves no room for doubt as to the controlling rule in

this State. This was an action for damages by the employee of a private corporation who alleged in pertinent part, that at the age of 59, after 23 years of employment, he was dismissed because, in accordance with his duties, he had exposed misconduct on the part of corporate personnel. The Court of Appeals (58 NY2d, at p 305) restated the New York rule as follows: "In sum, under New York law as it now stands, absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired."

In light of this explicit statement, petitioner's claim to a property interest in his public employment entitling him to a fair hearing before termination may be sustained only if a distinction might properly be made with regard to the terminable-at-will rule between private employment and public employment.

As a matter of first impression, there might be something to be said in favor of such a distinction. The court's opinion in *Murphy* (*supra,* p 301) noted the trend that has emerged in the courts of other states "to temper what is perceived as the unfairness of the traditional rule". The court declined the invitation to adopt "the emerging view", expressing the opinion that such a significant change was best left to the Legislature. The opinion noted (*supra,* p 302) that "the multifarious types of employment and the various circumstances of discharge" made it more appropriate for any tempering of the established rule to be "accomplished through a principled statutory scheme, adopted after opportunity for public ventilation, rather than in consequence of judicial resolution of the partisan arguments of individual adversarial litigants." Moreover, the court also noted (*supra,* p 302) that changes in rights and obligations under relationships established in reliance on existing legal principles might preferably "be given prospective effect only, or at least so the Legislature might conclude."

Arguably the considerations which led the Court of Appeals in *Murphy* (58 NY2d 293, *supra*) to prefer the legislative route to change in this area are less compelling

with regard to exempt permanent public employees who have been employed for a number of years under circumstances in which there is a reasonable expectation, indeed "mutually explicit understandings", that the employment will not be terminated except for cause. But we are unable to perceive any suggestion of support for such a distinction in any of the authorities that have previously addressed the issue presented.

However, as apparently construed by Special Term, in our opinion correctly, the petition may also be reasonably interpreted as alleging that petitioner's dismissal was arbitrary, capricious and in bad faith. Wholly without regard to the existence of a property interest entitling a public employee to a pretermination hearing, it has been the consistent rule in this State that a public employee may not be dismissed for such reasons. (*Matter of Talamo v Murphy,* 38 NY2d 637, 639; *Tuller v Central School Dist. No. 1 of Towns of Conklin, Binghamton, Kirkwood & Vestal,* 40 NY2d 487, 495; *Matter of Anonymous v Codd,* 40 NY2d 860; *Matter of Matsa v Wallach,* 42 AD2d 1004, 1005, affd 34 NY2d 891; *Matter of Ramos v Department of Mental Hygiene of State of N. Y.,* 34 AD2d 925.) Circumstances are clearly alleged in the petition and the accompanying exhibits that are legally sufficient to present such an issue. Among other such circumstances, we note that petitioner's dismissal followed a detailed defense of his actions which placed the responsibility for the failed experiment on his superiors, that one of the superiors so criticized was involved in the decision to dismiss petitioner, and that the decision to dismiss him followed within two days an earlier decision to restore him to his prior status as chemist without any apparent intervening event to explain the changed determination. In substance, the so far uncontradicted allegations of the petition, supported by the annexed exhibits, pointedly present the issue as to whether petitioner was dismissed because he chose not to accept quietly blame for a failed experiment that was more properly attributable to his superiors, including one who was actively involved in the proceedings that led to petitioner's dismissal.

Considered as a whole, the petition presents a claim that petitioner's termination was arbitrary, capricious and in bad faith sufficient to sustain denial of the motion to dismiss.

Accordingly, the order of the Supreme Court, New York County (OSTRAU, J.), entered January 19, 1982, which denied appellant's motion to dismiss this CPLR article 78 proceeding seeking petitioner's reinstatement as an employee of the Manhattan and Bronx Surface Transit Operating Authority, and related relief, and directed an immediate trial, should be modified on the law, without costs, to the extent of striking the direction for an immediate trial, and permitting the filing of an answer within 10 days after service of an order with notice of entry, dismissing the petition with regard to the New York City Transit Authority, and otherwise affirmed.

ASCH, J. (dissenting). No member of this court feels more strongly than do I that employees should be protected in their job security. The interest of a worker in a job, especially in public employment, has increasingly been protected, either as a property right or simply as a matter of fairness (see *Board of Regents v Roth,* 408 US 564; see, also, Friedman, Law in a Changing Society, ch 10, Individual Freedom, Group Control and State Security, p 255).

Upon review of the cases, however, it is my considered judgment that we are bound under constraint of *Weiner v McGraw-Hill, Inc.* (57 NY2d 458), and *Murphy v American Home Prods. Corp.* (58 NY2d 293), to conclude that the determination below must be reversed.

The Court of Appeals has been unequivocal. Judge JONES, speaking for the court in *Murphy* (*supra,* p 297) unqualifiedly states: "This court has not and does not now recognize a cause of action in tort for abusive or wrongful discharge of an employee; such recognition must await action of the Legislature. Nor does the complaint here state a cause of action for intentional infliction of emotional distress, for prima facie tort, or for breach of contract." The majority have sought to distinguish this case, but its holding and the penumbra of what it decides clearly prevent reaching the conclusion which the court does here.

The law is absolutely clear that an employer, public or private, has the unqualified right to terminate an employee without any kind of hearing, unless it is specifically mandated by statute or by contract, which is not the case here. (*Matter of Albury v New York City Civ. Serv. Comm., Dept. of Personnel,* 32 AD2d 895, affd 27 NY2d 694; see, e.g., Civil Service Law, §§ 63, 65; *Russell v Hodges,* 470 F2d 212; *Matter of Anonymous v Codd,* 40 NY2d 860; *Matter of Talamo v Murphy,* 38 NY2d 637; *Matter of Salvatore v Nasser,* 81 AD2d 1012, 1013; *Matter of City of Binghamton v Binghamton Civ. Serv. Forum,* 63 AD2d 790, 791; *Matter of Ause v Regan,* 59 AD2d 317, 323; *Sirohi v Merges,* 58 AD2d 645.)

In the instant proceeding the Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) demonstrates that petitioner is not represented by a collective bargaining unit and that petitioner can be dismissed at will. In the face of the above authorities, petitioner's major contention is that he is being deprived of a property right and, therefore, entitled to protection under the Federal and State Constitutions. He argues that the actions of MABSTOA will "clearly create a stigma, that will adversely affect [petitioner's] ability to obtain employment as a chemist." Petitioner is obviously attempting to demonstrate that his employment is a property right within the ambit of the 14th Amendment and entitled to protection. He is mistaken.

It can be argued that where the State charges a person with an act that might "seriously damage his standing and associations in his community" (*Board of Regents v Roth, supra,* p 573), then that person is entitled to notice and an opportunity to be heard. Here, however, our Legislature expressly stated that the employees of respondent are not entitled to the protection of the Civil Service Law (Public Authorities Law, § 1203-a). In addition, it cannot seriously be challenged that simply because petitioner was dismissed for an unsatisfactory job performance, this action will permanently stigmatize him and forever place a label on him as unemployable. This one action certainly does not foreclose petitioner from obtaining employment in his chosen field with a different employer.

The term used in a communication to petitioner — "failure of compliance" — realistically meant under the circumstances presented that he had not performed a particular assignment satisfactorily. This clearly is not what any of the cases have considered a reason for a name-clearing hearing (see *Matter of Petix v Connelie,* 47 NY2d 457, where "bad judgment" not of constitutional significance for purpose of name-clearing hearing; see, also, *James v Board of Educ.,* 37 NY2d 891). The petition itself did not allege that he had been stigmatized, nor did it seek such a hearing.

Also, the facts disclose that petitioner received "minimum due process". Petitioner was advised in writing of the charges against him and had an occasion "to appeal" the ruling. Although labor relations specialist Harrison left the determination up to one of petitioner's supervisors, who was implicated by petitioner, certainly a questionable practice, the final review was undertaken by the director of labor relations, an independent manager who had no stake in the outcome. Even though petitioner is, apparently, not a public employee (*supra*), he was accorded the minimum required protection.

Petitioner also attempts to show that he was discharged for exercising his right to free speech. However, the record does not support this argument. To interpret it as such would be to distort the First Amendment. Clearly, MABSTOA at all times claimed that petitioner's dismissal resulted from his participation in a project. There is not even the slightest hint that petitioner was being reprimanded for his speaking out on an issue of legitimate public concern, and this argument is without merit. The Constitution does not necessarily protect public employees against discharge for complaining about the management of the agency that employs them (*Connick v Myers,* 461 US __).

Petitioner places himself in a *de facto* public employment situation. He asserts that both Mr. Bulone, his supervisor, and Mr. Robinson, the director of labor relations, realized this when they recommended that he be placed on probation or returned to his prior title of chemist. While this may be so, the fact still remains that the Legislature chose not to place respondent's employees in the civil service

category. MABSTOA does not exist separate and apart from the State and City of New York, and its employees are controlled by government employees (see *Collins v Manhattan & Bronx Surface Tr. Operating Auth. ["MABSTOA"]*, 116 Misc 2d 6). Thus, MABSTOA cannot be estopped by the actions or statements of its employees (*Matter of Janosko v Kross,* 27 Misc 2d 210).

The thrust of the petition is that petitioner's constitutional rights were denied because he was terminated without compliance with the due process requirements of notice and a fair hearing. The resolution of this issue — clearly the central one presented in the petition itself — is whether or not the petitioner has a property interest in his position. As developed in the opinions of the Supreme Court, a property interest involves "a legitimate claim of entitlement" to a benefit, a claim which is created and defined from sources independent of the Constitution, such as State law. It may arise from statute, regulation or contract, express or implied. It may arise from "rules or mutually explicit understandings that support his claim of entitlement to the benefit" (see *Perry v Sindermann,* 408 US 593, 601).

As ultimately defined in *Arnett v Kennedy* (416 US 134), and *Bishop v Wood* (426 US 341), the test appears to be whether a public employee is terminable at will or whether he may only be terminated for cause. If under State law a public employee may not be terminated except for cause, he is entitled to due process.

It may be argued that the Court of Appeals dealt only with the situation of private employees terminable at will in *Weiner* (57 NY2d 458, *supra*) and *Murphy* (58 NY2d 293, *supra*). However, the express language in *Murphy* is all inclusive. "In sum, under New York law as it now stands, absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." (*Murphy v American Home Prods. Corp., supra,* p 305.) Even a superficial reading of the language of *Murphy,* and its use of both judicial precedent as well as statutory reference, makes it clear that the court is not limiting its

decision to purely private employees terminable at will. Most public employees are protected by civil service statutes. The petitioner herein does not fall into that category.

As has just been observed, "The old at-will doctrine, holding that in the absence of an express agreement any employee can be abruptly discharged for no cause or for any cause, is undergoing change in areas which recognize that such court-made rules of law are manifestly unjust." (Julien, The Missed Opportunities, NYLJ, April 27, 1983, p 1, col 1, p 28, col 1.) There is an avalanche of legal literature, media comment and decisional law, as well as legislative enactments, which have urged increased recognition of the rights of employees (see, e.g., cases cited in *Murphy v American Home Prods. Corp., supra* [MEYER, J., dissenting in part], ns 3, 4; see, also, Lewin, "Help for Workers Lacking Contracts", *New York Times,* April 21, 1983, D-1, cols 4, 5; see, also, the articles and cases cited in Julien, The Missed Opportunities, NYLJ, April 27, 1983, p 1, col 1).

It is clear that the Legislature has been very much aware of the issues involved in the cases concerning the discharge of employees. A number of bills have been enacted into law relating to special situations and special employees, and a number have been rejected. Bills have been proposed to protect employees at will, but the Legislature in its wisdom has refused to enact them into law (see *Murphy v American Home Prods. Corp., supra,* n 1, majority opn, n 5 dissenting opn).

It cannot be successfully argued in a vacuum that appellant's discharge was arbitrary and capricious. The majority notes alleged circumstances of petitioner's dismissal which it asserts are "legally sufficient to present such an issue." An examination of the record, however, makes it clear that petitioner had several opportunities, although informal, to present his position. It is uncontroverted that the experiment for which he had some responsibility, did not succeed, arguably because of his negligence, at least in part. Petitioner has the burden in this proceeding of showing that respondent's determination was arbitrary or capricious (see *Matter of Bergstein v Board of Educ.,* 34 NY2d 318,

323; *Haberman v Codd,* 48 AD2d 505, 508). The petitioner has failed to meet this burden.

Since upon his petition and the affidavits submitted, there was some evidence that his performance was less than satisfactory, "a dismissal upon that basis cannot be said to have been made in bad faith" (*Matter of Matsa v Wallach,* 42 AD2d 1004, 1005, affd 34 NY2d 891) or to have been arbitrary and capricious (*Matter of Smith v Chambers,* 32 AD2d 949, affd 26 NY2d 876). Sympathy is just not enough as a predicate for legal action by this court. The majority concedes that the appellant does not have a property interest in his job. But for us to afford him some relief, he must then establish some legally protected right.

*Murphy v American Home Prods. Corp.* (58 NY2d 293, *supra*) has expressly repudiated any legal theory upon which appellant may rest his claim. Presumably, the Court of Appeals has said what it means and means what it says.

In view of the unequivocal refusal of the Court of Appeals to recognize the right of an employee at will, whether public or private, to job security, as well as the refusal of the Legislature to extend legislative protection to these persons, it is incumbent upon this court to bow to superior authority in this matter, although most regretfully.

KUPFERMAN, J. P., LYNCH and MILONAS, JJ., concur with SANDLER, J.; ASCH, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on January 19, 1982, modified, on the law, without costs and without disbursements, to the extent of striking the direction for an immediate trial, and permitting the filing of an answer within 10 days after service of this court's order with notice of entry, dismissing the petition with regard to the New York City Transit Authority, and otherwise affirmed.