**John F. CARLSON**

v.

**VIACOM INTERNATIONAL INC.**

No. 82 Civ. 7305(MP).

United States District Court,
S.D. New York.

June 24, 1983.

John F. Carney, New York City, for plaintiff.

Bruce R. Kelly, Hughes, Hubbard & Reed, New York City, for defendant.

## MEMORANDUM

MILTON POLLACK, District Judge.

Plaintiff John F. Carlson, a former executive of defendant Viacom International Inc., alleges that Viacom breached its employment agreement with him. Defendant Viacom moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Carlson cross-moves for summary judgment pursuant to Rule 56 and asserts that if summary judgment is not granted in his favor that there are material issues of fact in dispute that prevent a grant of summary judgment for the defendant. For reasons stated below, defendant Viacom's motion for summary judgment is granted and the complaint is dismissed.

*Summary of Events*

Plaintiff was hired by Viacom as its Vice President of Finance in July 1979. On or about July 19, 1979, he was granted an option to purchase Viacom stock pursuant to a written agreement. This agreement entitled him to purchase 10,000 shares at $30.375 per share but was readjusted on May 11, 1981 to allow him to purchase 20,000 shares at $15.187 per share following a two-for-one split of the stock.

This agreement provided that Carlson's option was to become exercisable with respect to predetermined numbers of shares on set dates. Thus, for example, Carlson

was to be entitled to exercise his option to purchase 5,000 shares if he was still employed by Viacom on July 19, 1981. The only issue in dispute is whether Carlson's status at Viacom entitled him to execute these options.

The option agreement specifically stated that except as provided in the agreement, "no option shall be exercisable if the Employee is not an employee of the Company." (Agreement ¶ 3(b), Exhibit 15 to Defendant's Notice of Motion.) In addition, the agreement stated specifically that:

> the grant of an option shall not constitute an assurance of continued employment for any period, and such employment shall (subject to the provisions of any other contract between the Company and the Employee) be at the pleasure of the Company.

Agreement, ¶ 7, Exhibit 15 to Defendant's Notice of Motion.

Thus, Carlson had the right to exercise an option for 5,000 shares on July 19, 1981 if he was still an employee of Viacom on that date.

According to plaintiff's own testimony, at some time in December, 1980, Mr. Elkes, Viacom's President, informed Carlson that he should begin to look for other employment although he was not yet being terminated at that point. In March 1981, however, Elkes again spoke with Carlson and did terminate him. Elkes sent a memorandum dated March 20, 1981 which provided in part that:

> On or about March 30, 1981, you will relinquish the position of Vice President and Chief Financial Officer.
> You shall continue on the Viacom payroll as Senior Vice President until such time as you have secured employment elsewhere or until June 30, 1981, whichever is sooner, at which time your employment shall terminate. . . .
> Upon termination of your employment you will be entitled to receive as your financial compensation any accrued but

unpaid compensation plus the cash equivalent of any accrued vacation . . .

Exhibit 8 to Defendant's Motion to Dismiss.

Following receipt of this notice by Carlson, he responded by stating that he would prefer to receive vacation pay on a bi-weekly basis to remain on the payroll and be permitted to exercise the options on July 19, 1981. In response, Elkes immediately wrote to Carlson that he did not agree to his request for payment of vacation pay. Carlson nonetheless continued to work at Viacom until June 30, 1981.

Despite the clear intention of the defendant to terminate plaintiff as of June 30, 1981, plaintiff asserts that he should be entitled to exercise his stock option of July 19, 1981.

*No Legal Obstacle Prevented Carlson's Termination on June 30*

It is undisputed that Carlson's employment was of indefinite duration and that Viacom was entitled to dismiss him at any time. Indeed, the option contract which is the only written agreement relating to Carlson's employment, specifically provides that Carlson's employment is at the pleasure of the employer. Thus, Carlson was an employee at will.

The New York Court of Appeals has recently defined the rights of employees such as Carlson who are hired for indefinite terms. In *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 91 (1983), the Court considered the breach of contract claim of an employee at will. It held that New York law gave employers the "unfettered right" to terminate employment at any time. *Id.* The Court specifically refused to imply any obligations on the part of the employer that would destroy the employer's right to terminate the employee at any time.

■ Thus, Viacom was clearly entitled to terminate Carlson at any point in time. Any effort of plaintiff to suggest that defendant somehow had a good faith obligation to allow Carlson to continue at Viacom until he could exercise his stock options is

blocked by the explicit language of the *Murphy* Court that such obligations will not be implied to destroy the employer's right of termination. Carlson cannot and does not point to an express limitation on Viacom's right to terminate him. Viacom clearly was legally entitled to terminate Carlson effective any date that it selected.

*Carlson Was Terminated Effective June 30*

■ The series of memoranda exchanged by the parties in March 1981 demonstrates that Viacom chose to exercise its legal right to terminate Carlson. Viacom clearly could have terminated Carlson as of March 30, 1981, the date at which he was to relinquish his Chief Financial Officer position. Instead of simply exercising this option, Viacom elected to allow him to remain at their offices while he searched for employment. As Carlson was informed, the conditions under which he was allowed to remain at Viacom included his acceptance of his vacation time in cash and the final termination of his employment on June 30, 1981. Viacom was under no obligation to offer Carlson any employment at all beyond March 30, 1981. Thus, they were clearly entitled to offer him employment that would end on June 30. As he was not entitled to his option benefits on March 30, there was no obstacle to Viacom's limited extension of his employment that prevented him from receiving them. In sum, Viacom simply had no obligation to offer Carlson employment that would allow him to qualify as an employee on July 19 and the memoranda could not indicate more clearly that Viacom elected not to do so.

*Plaintiff's Arguments are Wholly without Merit*

Carlson asserts several reasons why he feels he should be entitled to the benefit of exercising his stock options. He asserts that the contract could be viewed as creating as a condition to his exercise of the stock options that he be employed on July 19. He then asserts that the defendant cannot rely on the non-occurrence of this condition as the defendant itself caused the non-occurrence of the condition and as the non-occurrence causes a disproportionate forfeiture that the Court should excuse as the condition was not a material part of the agreed exchange. He also asserts that he substantially complied with the terms of the agreement.

Plaintiff's argument that defendant cannot rely on its own hinderance of the condition that Carlson be an employee on July 19 fails as both the stock option agreement and New York law allowed the defendant to block the occurrence of the condition with the consequence of preventing the exercise of the stock options. The agreement specifically provided that Carlson's employment was to be at the pleasure of the company. New York law as set forth in *Murphy, supra,* clearly allows employees to be terminated at will. Carlson is essentially asserting that employers should not be allowed to stop paying terminated employees who are still willing to work.

Plaintiff's argument that defendant should not be allowed to rely on the failure of the plaintiff to satisfy the condition that he be an employee on the requisite date as this would constitute a forfeiture and as the condition was not a material part of the contract is wholly without merit. Defendant is not relying on the failure of the plaintiff to comply with an incidental term of the agreement but is asserting that the agreement that gave plaintiff rights was itself terminated. In any event, while plaintiff correctly states the law regarding conditions that constitute forfeitures, *see Uniroyal, Inc. v. Heller,* 65 F.R.D. 83, 93 (S.D.N.Y.1974), plaintiff is incorrect in asserting that the condition represents no essential part of the agreed exchange. The option agreement specifically provides that the only condition of exercise of the options is that the employee be employed at the exercise date. Not only was the condition thus material, but employment on the requisite date constituted the only condition of employment. *Uniroyal, supra,* is easily distinguished. In that case, Judge Brieant held that the condition that a closing be held had no apparent useful relation to the

**292**

underlying obligation. In the present case, the completion of a year of satisfactory employment is the heart of the option agreement.

Finally, plaintiff asserts that it substantially complied with the option agreement and that it is therefore entitled to payment. This argument flatly contradicts the terms of the agreement. The plan specifically provides that the employee must be with Viacom on certain dates and specifically provides that no guarantee of employment is made. To interpret this agreement as allowing employment at a date near the execution date would fail to give effect to these unquestionably valid provisions.

*Conclusion*

For reasons stated above, the defendant's motion for summary judgment is in all respects granted. The complaint is dismissed.

SO ORDERED.