**Dorlesca SALANGER, Plaintiff,**

v.

**U.S. AIR, Defendant.**

**No. 81–CV–542.**

United States District Court, N.D. New York.

April 2, 1985.

R.J. & P.R. Shanahan, Paul R. Shanahan, Syracuse, N.Y., for plaintiff.

Hancock & Estabrook, David E. Peebles, Syracuse, N.Y., for defendant.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

This action arises out of plaintiff Dorlesca Salanger's allegedly improper discharge from her employment with defendant U.S. Air. Jurisdiction is predicated upon 28 U.S.C. § 1332. A trial to the Court was held on August 7–9, 1984.[1] The final sub-

---

**1.** The following witnesses testified at the behest of plaintiff: plaintiff, Dorlesca Salanger, Michael J. Salanger, plaintiff's husband, and Leon-
ard Filippi, a U.S. Air employee. The following witnesses testified at the behest of defendant: Richard Rothery, a U.S. Air management em-

missions of counsel were filed on November 16, 1984. There follow the findings of fact and conclusions of law mandated by Fed.R.Civ.P. 52(a).

## II

In 1967, plaintiff obtained employment with Mohawk Airlines ("Mohawk") as a salesperson and reservationist. During an initial nonsalaried training period, Ronald Bailey, a Mohawk training instructor, represented to plaintiff that, upon completion of her training, she would have job security and would be terminated only for just cause.[2] Allegedly relying on these statements, plaintiff completed the training program. She then was assigned to Mohawk's sales office in Syracuse, New York. In 1972, Mohawk merged with Allegheny Airlines ("Allegheny") and plaintiff continued her employment under the new management. In 1978, at her request, plaintiff was reassigned to the Allegheny ticket counter at Hancock International Airport ("Hancock") in Syracuse as a "Customer Service Agent." In October of 1978, defendant acquired Allegheny and subsequently changed the name of the airline to U.S. Air. Plaintiff continued her employment at Hancock as an employee of defendant.

At some point in 1980, defendant, through its Security Department and Customer Service Department, conducted an investigation of plaintiff's suspected involvement in the misappropriation of company funds.[3] On September 5, 1980, plaintiff was suspended from her position during the pendency of this investigation. Eventually, based upon the findings of the investigation, a criminal complaint was filed charging plaintiff with the crime of grand larceny in the third degree, N.Y. Penal Law § 155.30 (McKinney 1982), and a warrant for plaintiff's arrest was issued by a Town Justice of the Town of Dewitt. Pursuant to this warrant, plaintiff was arrested on September 10, 1980, and arraigned in the Town of DeWitt Justice Court. Thereafter, on September 24, 1980, plaintiff received a letter from defendant, dated September 19, 1980, notifying her that the investigation had been completed and that her employment was terminated. The letter also informed plaintiff that "[i]f you feel you have received unfair treatment you may pursue the matter through the Grievance Procedure." Plaintiff's Exhibit 8.

In accordance with the Personnel Policy Guides and other corporate documents issued by defendant and its predecessors, which expressly provided for a grievance procedure to be available to employees terminated "for cause," Plaintiff's Exhibits 1, 2, 3, 4; Defendant's Exhibit AG, plaintiff exhausted the three grievance steps available to her. At the conclusion of the grievance proceedings, defendant adhered to its original determination to discharge plaintiff. Finally, on March 10, 1981, a grand jury in Onondaga County dismissed the charge of grand larceny in the third degree against plaintiff pursuant to N.Y.Crim. Proc. Law § 190.75 (McKinney 1982). Plaintiff then applied to defendant for reinstatement, but was refused an appointment to her former position or to any other position.[4]

Plaintiff sets forth two claims arising from her termination and defendant's re-

ployee, Donald Sansone, a U.S. Air training instructor, and James Riddel, a U.S. Air security investigator.

**2.** Mr. Bailey is no longer employed by U.S. Air, the successor to Mohawk, and did not testify at trial.

**3.** The investigation centered around certain airline ticket sales to which, as a Customer Service Agent of U.S. Air, plaintiff was a party. The transactions occurred on February 23, 1980, March 1, 1980, April 13, 1980, and June 11, 1980. In each case, the tickets were paid for in cash by the customers. However, neither the cash nor the portion of the tickets which the ticketing agent ordinarily would retain were included in plaintiff's daily sales reports. Each ticket was used by the purchasing customer.

**4.** Plaintiff's request for reinstatement was made in the form of a telephone call to Richard Rothery, a U.S. Air management employee. At that time, Mr. Rothery informed plaintiff that there was no position available for her.

fusal to reinstate her upon the dismissal of the charges by the grand jury.[5] First, she alleges that, based upon the oral representations of Ronald Bailey and the language of the Personnel Policy Guides outlining a grievance procedure for those employees terminated for cause, a contract existed between her and defendant ensuring that she would be terminated solely for just cause. She contends that since the evidence before defendant was not sufficient to establish that she had misappropriated any funds, no just cause existed, and thus, the contract was breached. Second, plaintiff argues that defendant's refusal to reinstate her after the criminal charge against her was dismissed violated § 296(16) of the New York Executive Law which prohibits a corporation from "act[ing] upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual ... in connection with the licensing, employment or providing of credit or insurance to such individual." N.Y. Exec.Law § 296(16) (McKinney 1982).

## III

### A. *Breach of Contract Claim*

■ Under New York law, absent a specific contractual or statutory provision to the contrary, an employer has an unqualified right to terminate an employee at will. *Bergamini v. Manhattan and Bronx Surface Transit Operating Authority*, 94 A.D.2d 441, 449, 463 N.Y.S.2d 777, 782 (1st Dep't 1983) (Asch, J., dissenting), *reversed*, 62 N.Y.2d 897, 478 N.Y.S.2d 857, 467 N.E.2d 521 (1984); *Albury v. New York Civil Service Commission*, 32 A.D.2d 895,

302 N.Y.S.2d 3, 4 (1st Dep't), *aff'd*, 27 N.Y.2d 694, 314 N.Y.S.2d 13, 262 N.E.2d 219 (1969). Plaintiff, however, alleges that a contractual qualification of defendant's authority to terminate existed in that Bailey's representations to her and the grievance procedures "recognize[d] the obligation of the defendant not to discharge an employee except for just cause." Plaintiff's Trial Brief at 3. Plaintiff relies exclusively on the New York Court of Appeals decision in *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982). There, a publishing house employee resigned from his position to accept an employment offer from defendant, a competing publishing house. During negotiations over the position, defendant's representatives informed plaintiff that company policy permitted termination solely for just cause. A written job application, which plaintiff was required to sign, also stated that termination could occur solely for just cause. After working eight years for defendant and declining several other job offers in that period, plaintiff was terminated for no apparent reason. In holding that the issue whether a contract to terminate solely for just cause was formed presented a question of fact for trial even though no formal employment contract existed, the court noted:

First, plaintiff was induced to leave Prentice-Hall with the assurance that McGraw-Hill would not discharge him without cause. Second, this assurance was incorporated into the employment application. Third, plaintiff rejected other offers of employment in reliance on the assurance. Fourth, appellant alleged that, on several occasions when he had recommended that certain of his subor-

5. On January 7, 1983, this Court issued a Memorandum-Decision and Order granting defendant's motion for summary judgment as to plaintiff's claim for wrongful discharge. *Salanger v. U.S. Air*, 560 F.Supp. 202 (N.D.N.Y.1983). That dismissal was premised on the fact that no such claim was recognized by New York law. *Id.* at 204–05. Since the issuance of that decision, the New York Court of Appeals has unequivocally held that New York "has not and does not now recognize a cause of action in tort for abusive or

wrongful discharge of an employee." *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 297, 461 N.Y.S.2d 232, 233, 448 N.E.2d 86, 87 (1983). "[S]uch recognition must await action of the Legislature." *Id.*, 461 N.Y.S.2d at 233, 448 N.E.2d at 87. This Court, however, granted plaintiff the opportunity to replead her complaint to allege a breach of contract claim. *Salanger v. U.S. Air*, 560 F.Supp. at 207. On March 14, 1983, plaintiff took advantage of this opportunity and filed an amended complaint.

dinates be dismissed, he was instructed by his supervisors to proceed in strict compliance with the handbook and policy manuals because employees could be discharged only for just cause. He also claims that he was told that, if he did not proceed in accordance with the strict procedures set forth in the handbook, McGraw-Hill would be liable for legal action.

57 N.Y.2d at 465–66, 457 N.Y.S.2d at 197, 443 N.E.2d at 445. Here, because defendant's oral and written representations arguably induced plaintiff to obtain and continue employment with defendant and an express grievance procedure existed for those employees discharged for cause, plaintiff maintains that the *Weiner* analysis is dispositive.

After careful consideration of the facts and relevant case law, the Court concludes that the *Weiner* analysis is inapplicable to the present facts, and consequently, defendant's authority to terminate plaintiff was not contractually limited. Initially, *Weiner* must be interpreted in light of the New York Court of Appeals decision in *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). In *Murphy*, the court held that contractual provisions limiting the employer's right to terminate may not be implied in an employment agreement. *Id.* at 305, 461 N.Y.S.2d at 237, 448 N.E.2d at 91. The court stated:

> The parties may by express agreement limit or restrict the employer's right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent. In sum, under New York law as it now stands, absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.

*Id.*, 461 N.Y.S.2d at 237, 448 N.E.2d at 91; *accord Sprott v. Avon Products, Inc.*, 596 F.Supp. 178, 183–84 (S.D.N.Y.1984); *Carl-*

*son v. Viacom International Inc.*, 566 F.Supp. 289, 290–91 (S.D.N.Y.1983).

Here, no such express limitation is apparent. Plaintiff had no written contract of employment limiting defendant's ability to terminate. While the Personnel Policy Guides and grievance procedures did provide a forum to appeal termination for cause decisions, no language in any corporate document limited defendant's authority to discharge for any reason. As long as the grievance procedure was made available to plaintiff, all contractual obligations relating to her discharge were met.

In addition, the oral assurances of job security allegedly made by Ronald Bailey are inconclusive. Other than plaintiff's own testimony, there is no evidence to substantiate these allegations. More important, these allegations are contradicted by the absence of language in the Personnel Policy Guides limiting the grounds for termination. As admitted by plaintiff's counsel at trial, any contractual limitation of the grounds for plaintiff's termination must be implied from a reading of various corporate documents. Trial Transcript at 260. Such a contract by implication, however, is not recognized under New York law.

Even assuming that *Murphy* does not otherwise modify the holding in *Weiner*, on a factual basis *Weiner* is distinguishable from the present case. Here, plaintiff was not induced to leave other employment by assurances of job security. Trial Transcript at 105. Neither did plaintiff decline other job offers to work for defendant. *Id.* Moreover, while in *Weiner* the employee's job application expressly provided that termination would occur solely for just cause, no such express guarantee existed here. Finally, the plaintiff has failed to establish how she relied on any representations made by defendant and its employees relating to job security. Her conclusory statements as to reliance are insufficient to establish this element of her claim. *Patrowich v. Chemical Bank*, 98 A.D.2d 318, 322–23, 470 N.Y.S.2d 599, 603 (1st Dep't 1984).

### B. *New York Executive Law Claim*

■ Section 296(16) of the New York Executive Law prohibits a corporate entity from denying employment to an applicant on the basis of an arrest "which was followed by a termination of that criminal action or proceeding in favor of such individual." N.Y.Exec.Law § 296(16) (McKinney 1982). It, however, "does not prevent an employer from acting adversely with respect to an employee if such action is motivated by bona fide business reasons not otherwise proscribed by the statute." *Salanger v. U.S. Air,* 560 F.Supp. 202, 206 (N.D.N.Y.1983). Here, plaintiff alleges that defendant's failure to reinstate her upon request after the grand jury had dismissed the charges violated § 296(16). In ruling on defendant's motion for summary judgment, this Court noted:

> Here, this Court cannot say, as a matter of law, that defendant's failure to rehire plaintiff, after the criminal charges against her were dismissed, was not motivated by plaintiff's arrest. It well may be that defendant's decision not to rehire plaintiff was occasioned by the results of its independent, internal investigation into plaintiff's alleged misconduct. However, defendant's decision just as easily could have been motivated by the arrest. The need to resolve this factual issue precludes a grant of summary judgment on plaintiff's Executive Law claim at this time.

560 F.Supp. at 206.

■ After careful review of this factual issue, the Court concludes that plaintiff has not established, by a preponderance of the evidence, that defendant's failure to reinstate her was due to her arrest. In the letter of termination sent by defendant to plaintiff, dated September 19, 1980, defendant indicated that the basis for the initial decision to terminate was an investigation by its Security and Customer Service Departments into an alleged misappropriation of funds. Plaintiff's Exhibit 8. In a letter from defendant, dated November 3, 1980, notifying plaintiff of the completion of her grievance review, defendant indicated that the grievance was denied because no new information had been uncovered. Plaintiff's Exhibit 9. It seems clear that defendant's decision not to reinstate plaintiff was motivated not by her arrest, but rather by defendant's own investigation. The testimony at trial in fact suggests that plaintiff, at the time of her request for reinstatement, was informed by an employee of defendant that the grand jury's decision had nothing to do with the decision to terminate her. Trial Transcript at 340. Other than the fact that plaintiff was arrested and later refused reinstatement, no testimony or other evidence adduced at trial substantiates the charge that her arrest triggered the refusal. Even if plaintiff had not been arrested, it is apparent that defendant would have taken the same action since it was convinced, through its internal investigation, that plaintiff had misappropriated company funds.[6] Accordingly, defendant is entitled to judgment on this claim as well.

### IV

For all the foregoing reasons, this Court concludes that the plaintiff has failed to establish any claims set forth in her complaint. Accordingly, entry of judgment in favor of defendant is directed.

It is so Ordered.

---

**6.** Defendant's suspicions apparently were compounded by the fact that during the period when the improper transactions occurred, plaintiff was having some financial difficulty. Between May of 1979 and March of 1980, plaintiff had cashed 13 checks totaling $780.00 at the U.S. Air cash drawer at Hancock International Airport which were returned for insufficient funds. Defendant's Exhibit AE. In one four-week period, coinciding with the sale of several of the tickets in question, plaintiff's pay amounted to "very little, if anything," Trial Transcript at 189, due to deductions from her pay to reimburse defendant for the checks. *Id.*