*460 OPINION OF THE COURT
Fuchsberg, J.
In a matter raising an issue of wide concern to employers and employees, we must decide whether, in the circumstances of this case, the plaintiff, though not engaged for a fixed term of employment, pleaded a good cause of action for breach of contract against his employer because, allegedly, he was discharged without the “just and sufficient cause” or the rehabilitative efforts specified in the employer’s personnel handbook and allegedly promised at the time he accepted the employment.
The operative facts deserve emphasis. Taken most favorably to the plaintiff, as they must in the context of an appeal from an order made pursuant to CPLR 3211 (subd [a], par 7)[1] (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506), they show that, in 1969, the plaintiff, Walton Lewis Weiner, a young man who four years earlier had entered upon a career in book publishing with another employer, Prentice-Hall, was invited to engage in discussions looking towards his joining the staff of the defendant, McGraw-Hill, Inc. In the course of these talks, McGraw’s representative, aware of Weiner’s position with Prentice-Hall, assured his prospect that, since his company’s firm policy was not to terminate employees without “just cause”, employment by it would, among other things, bring him the advantage of job security. Concomitantly, the application Weiner thereafter signed and submitted, on a printed McGraw form, specified that his employment would be subject to the provisions of McGraw’s “handbook on personnel policies and procedures”. This reference as relevant here, represented that “[t]he company will resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee have been taken and failed. However, if the welfare of the company indicates that dismissal is neces *461 sary, then that decision is arrived at and is carried out forthrightly” (Handbook, § 8.20, par [8]).
These undertakings were important to Weiner, who alleges not only that he placed “good faith reliance” on them in leaving his existing employer, but in the process forfeited all his accrued fringe benefits and a salary increase proffered by Prentice-Hall to induce him to remain in its employ.
Following written approval, affixed at the foot of the application form by two members of the defendant’s staff, one the interviewer and the other a supervisor, McGraw engaged Weiner’s services. For the next eight years, so far as escalation in rank (to director of promotion services) and periodic raises in his level of compensation would seem to indicate, Weiner had every reason to believe he had, if anything, more than met the reasonable requirements of his new post. Other offers of employment he routinely rejected. Nevertheless, in February, 1977, he suddenly found himself discharged for “lack of application”.
There ensued this litigation, by which, in a complaint speaking broadly in the language of breach of contract, the plaintiff seeks damages for his wrongful termination.[2] To support its CPLR 3211 (subd [a], par 7) motion to dismiss, defendant’s argument was, and is, that there existed no contract of employment under which McGraw-Hill’s evaluation of Weiner’s job performance could be challenged in a court of law. In its view, the form signed by the parties was just an application for employment and nothing more. Defendant further contends that its oral promise of job security was in no way binding on it.
In upholding the complaint, Special Term merely made a point of distinguishing this case from ones like Edwards v Citibank N.A. (74 AD2d 553, app dsmd 51 NY2d 875), where the employee, unlike here, had not bound himself to the contents of a handbook. On appeal from this decision, a divided Appellate Division reversed, on the law, and granted the motion. In effect, the majority reasoned that, *462 because Weiner’s employment was one at will, his employer could release him arbitrarily and with impunity. Dissenting, Justice Kupferman would not agree, as he put it, that “an employee handbook on personnel policies and procedures is a corporate illusion, ‘full of sound * * * signifying nothing’”. (83 AD2d, at p 811.)
For the reasons which follow, we believe the plaintiff stated a cause of action.
Prefatorily, however, we note that the parties have supplemented the arguments they directed to the contract issue with ones which dwell, pro and con, on the effectiveness of a miscellany of such legal formulations as “abusive discharge”, “implied promise of fair treatment” and “good faith”, which some courts have applied, in the context of particular cases, to overcome what they conceived to be the harsh effect of inflexibly strict enforcement of at-will employment agreements, under which by their terms either employer or employee may sever the relationship without cause and without notice.[3] Without more, because we hold that plaintiff’s complaint spelled out a cause of action in contract, this case does not present the occasion to address these theories.
Nevertheless, by way of background, it is of interest to observe that the at-will employment rule, which originated centuries ago as an adjunct to the law of master and servant in England,[4] in later times was to find a receptive legal environment in laissez-faire nineteenth century *463 America (see, especially, Martin v New York Life Ins. Co., 148 NY 117).[5] So strong indeed was the turn-of-the-century legal and socioeconomic philosophy that nurtured it that for long Federal constitutional law deferred to it as well (see, e.g., Coppage v Kansas, 236 US 1, 13-14; Adair v United States, 208 US 161, 174-175). But, significantly, starting approximately in the days of the Great Depression in the early nineteen thirties and continuing through the present, though political, scholarly and industrial agitation for modification of the rule to provide greater job security has been, insistent, there is growing support for remedial legislative action (see Report of Committee on Labor and Employment Law, At-Will Employment and the Problem of Unjust Dismissal, 36 Record of Assn of Bar of City of New York 170 [April, 1981]; Blades, Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power, 67 Col L Rev 1404, citing to Tannenbaum, A Philosophy of Labor, p 9; Feerick, Employment-At-Will Rule and Unjust Dismissal, NYLJ, Aug. 6, 1982, p 1, col 1).
Concentrating then on plaintiff’s breach of contract approach alone, initially we dispose of any Statute of Frauds point. Though not raised by the defendant, Special Term thought it pertinent. Suffice it to say that the agreement between Weiner and McGraw-Hill, whether terminable at will or only for just cause, is not one which, “by its terms”, could not be performed within one year and, therefore, is not one which is barred (General Obligations Law, § 5-701; North Shore Bottling Co. v Schmidt & Sons, 22 NY2d 171, 175-176; see, generally, 28 ALR2d 878).
Turning now to substance, it is also clear that the fact that plaintiff was free to quit his employment at will, standing by itself, was not entitled to conclusory effect. Such a position proceeds on the oversimplified premise that, since the plaintiff was not bound to stay on, the *464 agreement for his employment lacked “mutuality”, thus leaving the defendant free to terminate at its pleasure. But this would lead to the not uncommon analytical error of engaging in a search for “mutuality”, which is not always essential to a binding contract, rather than of seeking to determine the presence of consideration, which is a fundamental requisite. For, while coextensive promises may constitute consideration for each other, “mutuality”, in the sense of requiring such reciprocity, is not necessary when a promisor receives other valid consideration (Clausen & Sons v Hamm Brewing Co., 395 F2d 388; Meurer Steel Barrel Co. v Martin, 1 F2d 687, 688; McCall Co. v Wright, 198 NY 143, 153-154; see 1 Williston, Contracts [3d ed], § 105A, p 421 et seq.; 1A Corbin, Contracts, § 152, p 2 et seq.; 21 NY Jur 2d, Contracts, § 11, p 424).
As to consideration, any basic contemporary definition would include the idea that it consists of either a benefit to the promisor or a detriment to the promisee (Holt v Feigenbaum, 52 NY2d 291, 299). As elaborated in Hamer v Sidway, the seminal case on the subject, “[i]t is enough that something is promised, done, forborne or suffered by the party to whom the promise is made as consideration for the promise made to him” (124 NY 538, 545).
Far from consideration needing to be coextensive or even proportionate, the value or measurability of the thing forborne or promised is not crucial so long as it is acceptable to the promisee. Thus, courts have not hesitated to find sufficient consideration not only in what is now the proverbial peppercorn (Whitney v Stearns, 16 Me 394), but in “a horse or a canary, or a tomtit if [the promisee] chose” (Couldery v Bartrum, 19 Ch D 394, 399 [Jessel, M.R.], both cited in 1 Corbin, Contracts, § 122, p 528). In fact, the detriment suffered or the thing promised need be of no benefit to the one who agreed to it. So, in Hamer what the plaintiff “suffered” was self-denial of liquor and tobacco, a sacrifice which prompted our court, quoting from Anson’s Principles of Contracts (at p 63), to explain that it would “‘not ask whether the thing which forms the consideration does in fact benefit the promisee or a third party, or is *465 of any substantial value to anyone’ ” (Hamer v Sidway, supra, at p 545).[6]
Apt too in the circumstances before us now is the following comment by Corbin: “[I]f the employer made a promise, either express or implied, not only to pay for the service but also that the employment should continue for a period of time that is either definite or capable of being determined, that employment is not terminable by him ‘at will’ after the employee has begun or rendered some of the requested service or has given any other consideration * * * This is true even though the employee has made no return promise and has retained the power and legal privilege of terminating the employment ‘at will’. The employer’s promise is supported by the service that has been begun or rendered or by the other executed consideration” (1A Cor-bin, Contracts, § 152, p 14). So understood, an agreement on the part of an employer not to dismiss an employee except for “good and sufficient cause only” and, if such cause was given, until the prescribed procedures to rehabilitate had failed, does not create an ineluctable employment at Will.
These propositions in mind, we find in the record, inclusive of plaintiff’s own affidavit, sufficient evidence of a contract and a breach to sustain a cause of action. First, plaintiff was induced to leave Prentice-Hall with the assurance that McGraw-Hill would not discharge him without cause. Second, this assurance was incorporated into the employment application. Third, plaintiff rejected other offers of employment in reliance on the assurance. Fourth, appellant alleged that, on several occasions when he had recommended that certain of his subordinates be dis *466 missed, he was instructed by his supervisors to proceed in strict compliance with the handbook and policy manuals because employees could be discharged only for just cause. He also claims that he was told that, if he did not proceed in accordance with the strict procedures set forth in the handbook, McGraw-Hill would be liable for legal action. In our view, these factors combine to present a question for trial: Was defendant bound to a promise not to discharge plaintiff without just and sufficient cause and an opportunity for rehabilitation? (Cf. Parker v Borock, 5 NY2d 156, 159-160 [collective bargaining agreement provision prohibiting discharge “without good and sufficient cause” held binding on employer though the employee otherwise would have been one at will].)[7]
Finally, on the trial, it should, of course, be remembered that Martin itself, when, in 1895, it adopted New York’s at-will rule, afforded it no greater status than that of a rebuttable presumption (148 NY, at p 121; see, also, Mandel, Preparation of Commercial Agreements [1978 ed], pp 164-165 [if no definite term is fixed by contract, a hiring at will is deemed to have resulted only “in the absence of circumstances showing a different intention”]). In determining whether such a presumption is overcome here, the trier of the facts will have to consider the “course of conduct” of the parties, “including their writings” (Brown Bros. Elec. Contrs. v Beame Constr. Corp., 41 NY2d 397, 399) and their antecedent negotiations. Moreover, as Brown suggests (at p 400), it is not McGraw’s subjective *467 intent, nor “any single act, phrase or other expression”, but “the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain”, which will control.
Consequently, the order of the Appellate Division should be reversed and the order of Special Term reinstated.

. Styled as one made pursuant to CPLR 3211 (subd [a], par 7) after joinder of issue, as permitted by CPLR 3211 (subd [e]), and never having been converted to one for summary judgment as permitted by CPLR 3211 (subd [c]), the motion required the court to examine any supplementary submissions to the end that plaintiff’s allegations be given their most favorable intendment (Arrington v New York Times Co., 55 NY2d 433, 442; Guggenheimer v Ginzburg, 43 NY2d 268, 272).

. We deal here with the plaintiff’s first cause of action alone. As originally drawn, the complaint contained three causes of action, but the second and third, theorizing Weiner’s grievance in terms of tort, were dismissed for legal insufficiency. No appeal having been taken from their rejection, these do not demand our attention.

. (See, e.g., Toussaint v Blue Cross & Blue Shield of Mich., 408 Mich 579; Pugh v See’s Candies, 116 Cal App 3d 311; Cleary v American Airlines, 111 Cal App 3d 443; Fortune v National Cash Register Co., 373 Mass 96; Note, Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith, 93 Harv L Rev 1816,1824-1826; Note, A Common Law Action for the Abusively Discharged Employee, 26 Hastings LJ 1434, 1441; see, generally, Discharge of At-Will Employee, Ann., 12 ALR4th 544, which, interestingly, indicates that Johnson v National Beef Packing Co., 220 Kan 52, and Cederstrand v Lutheran Brotherhood, 263 Minn 520, reflect a small minority’s vestigial opposition to an ever growing “trend toward statutory and judicial rejection of the traditional employment-at-will common-law rule”; Feerick, Employment-at-Will Rule and Unjust Dismissal, NYLJ, Aug. 6, 1982, p 1, col 1.)

. As far back as 1562, England placed statutory limits upon the power of an employer to terminate an employee unless there was “reasonable cause to do so” (1 Blackstone’s Commentaries, 131 [1878]). However, when transplanted to this country, the rule resumed its unconditional classical form (see De Giuseppe, Effect of the Employment-At-Will Rule on Employee Rights to Job Security and Fringe Benefits, 10 Ford Urban LJ 1, 3-4; see Feerick, Employment at Will, NYLJ, Oct. 5,1979, p 1, col 1).

. The holding in Martin was grounded essentially on a statement in Wood, Master and Servant (8 136 [2d ed], 1886), in which, as subsequent commentators have pointed out, the author relied on no more than “scant authority of questionable value”, the cases he cited having been decided “entirely on their facts and none stand squarely for the general proposition that an indefinite hiring is terminable at will” (De Giuseppe, op. cit, 10 Ford Urban LJ, at p 6, and n 13).

. In the same vein, it has been put that “where the promisor makes a request, the only reliance which makes the promisor’s failure to perform actionable is the promisee’s doing what is requested and that reliance if detrimental is consideration and liability cannot be predicated on promissory estoppel” (Snyder, More On Promissory Estoppel, 26 Brklyn L Rev 41). In so saying, Professor Snyder points up the interesting fact that, because, on analysis, most reported applications of promissory estoppel involve the forbearance of a right or benefit by the promisee at the request of the promisor, thus placing them within the mainstream of contract law, their reliance on promissory estoppel was unnecessary (see, e.g., Rosen v Guaranteed Sanitation, 32 Misc 2d 698). Without more, therefore, the present case, contrary to plaintiff’s assertions, is not an appropriate one in which to even consider, much less pass upon, his estoppel assertions.

. As to the alarums sounded by the dissent concerning the possibility that this opinion, bespeaking nothing but traditional contract law principles, will move employers out of the State, suffice it that there is nothing to indicate that even California, Michigan, Massachusetts or other States which have adopted less conventional theories, have had any such experience. To this it well may be added that the Association of the Bar Report, which both this opinion and the dissent (dissent, p 469) find cite-worthy, has this to say: “Arbitrariness in the workplace may also be counterproductive in a larger sense, in breeding a demoralized workforce and its own brand of inefficiency. Certainly the examples of Japan and Germany weaken the force of the contention that protection against arbitrary discharge necessarily undermines the productivity of an economy” (Report of Committee on Labor and Employment Law. 36 Record of the Assn of Bar of City of New York 170, 188-189, citing Vogel, Japan as Number One. Lessons for America, pp 131-157; Drucker, The Job as Property Right, Wall St J, March 4. 1980, p 24, col 4; Pascale, Personnel Practices and Employee Attitude, 31 Human Relations 597; Hallett, Social Economy of West Germany, p 90).