■ GERALD L. HAGER, Appellant, v UNION CARBIDE CORPORATION, Respondent. — Order of the Supreme Court, New York County (Kenneth Shorter, J.), entered March 28, 1984 dismissing the complaint, is affirmed, without costs.

Special Term properly concluded on this record that none of the five causes of action alleged in the complaint is cognizable. The dissent, relying upon excerpted language from *Weiner v McGraw-Hill, Inc.* (57 NY2d 458), would sustain the first cause of action, which, after setting forth certain factual assertions, alleges merely that "[d]efendant's oral and written representations to plaintiff constitute an agreement for plaintiff's continued employment by defendant subsequent to defendant's relocation to Danbury Connecticut". Accepting the factual allegations

of the complaint as true, they show no more than an "employment-at-will" which in our State is terminable at any time, by either party. (*Martin v New York Life Ins. Co.,* 148 NY 117.) As pointed out by Judge Wachtler in his dissenting opinion in *Weiner* (57 NY2d 458, 467), which was cited with approval in *Murphy v American Home Prods. Corp.* (58 NY2d 293, 305, n 2): "absent some form of contractual agreement between an employee and employer *establishing a durational period,* the employment is presumed terminable at the will of either party and the employee states no cause of action or breach of contract by alleging that he or she has been discharged". (Emphasis added.)

Here there is no allegation of any "durational period" nor is there any allegation of a promise, express or implied " 'that the employment should continue for a period of time that is either definite or capable of being determined' " (*Weiner v McGraw-Hill, Inc., supra,* p 465, citing 1A Corbin, Contracts, § 152, p 14).

The holding in *Weiner* (*supra,* p 465) is inapposite to the case at bar, however since, although no *durational period* of the employment was established, the majority's determination finding an enforceable contract was bottomed specifically upon a finding that "an agreement on the part of an employer not to dismiss an employee except for 'good and sufficient cause only' and, if such cause was given, until the prescribed procedures to rehabilitate had failed, does not create an ineluctable employment at will." The plaintiff's employment in *Weiner* (p 460) was subject to the provisions of McGraw's " 'handbook on personal policies and procedures' " which provided, in pertinent part that " '[t]he company will resort to dismissal for just and sufficient cause only, and only after all practical steps toward rehabilitation or salvage of the employee have been taken and failed". No such handbook with comparable personnel procedures and policies is alleged to have existed at Union Carbide nor was any such promise made to this plaintiff. Concur — Sandler, J. P., Silverman and Alexander, JJ.

Asch and Fein, JJ., dissent in a memorandum by Asch, J., as follows: Plaintiff Gerald L. Hager commenced employment as a research chemist with defendant Union Carbide on November 11, 1965. Subsequently, he assumed various corporate positions with increased job responsibility. Immediately prior to the termination of his employment, Hager held the position of senior market research analyst in Union Carbide's chemical and plastics group. During the course of Hager's employment, he routinely received favorable evaluations from his corporate superiors.

In 1977, Union Carbide made it known to its employees, including Hager, that it planned to relocate a substantial por-

tion of its operation to Danbury, Connecticut. As a result, Union Carbide advised that it would be necessary for many employees to relocate with their jobs to Connecticut if they intended to remain with Union Carbide. On April 28, 1978, Hager received a notice that his job was among those to be relocated to Danbury. He was authorized to avail himself of relocation assistance provided by Union Carbide.

On January 12, 1979 Hager was advised, in writing, that his specific job was scheduled for relocation to Danbury, Connecticut, in January, 1980. That letter, signed by Mr. Arthur C. McLeod, president of Union Carbide's Chemicals and Plastics Operations Division, stated, *inter alia:* "We want you to come to work at the new headquarters." During the period of 1979-1980, Hager routinely was advised of the progress of the anticipated relocation and was notified of several delays.

During this same 1979-1980 period, Hager was provided with financial assistance in connection with his personal relocation, including enrollment in a course dealing with the purchase of a new residence. Also, during this time, Hager was authorized by Union Carbide to select furniture for his new office in Danbury.

In late 1979 or early 1980, Union Carbide engaged in a reorganization of Hager's division. Hager and his colleagues were concerned about the effect of this reorganization on their future employment with Union Carbide subsequent to their relocation to Danbury, Connecticut. Hager and his colleagues, including his immediate supervisor, Mr. E. Y. Chung, were assured by several of Union Carbide's executives that they all would have jobs when Union Carbide moved to Danbury.

As early as July, 1978, and at periodic intervals thereafter, he was personally solicited by Chung to commit himself to moving to Connecticut. Hager was likewise personally solicited in the fall of 1979 by Mr. C. E. O'Rourke, assistant director of the marketing department of Union Carbide's Chemicals and Plastics Division. Based upon these solicitations and representations, Hager engaged in a search for, found and contracted for a new residence in Connecticut.

Hager's verbal assurances to Union Carbide of his intended relocation with Union Carbide to Danbury were apparently inadequate for Union Carbide's purposes. Indeed, on May 7, 1980, Hager was advised by Mr. W. D. Jockle, Union Carbide's director of marketing, that Union Carbide sought a specific written commitment from Hager to evidence his intentions to relocate. Hager executed the requested commitment, but was not provided with a copy. However, such written commitment

was acknowledged by Mr. Jockle in a letter to Hager dated May 7, 1980. May 7, 1980 was also the date of the closing of title for Hager's new residence, a condominium in Stamford, Connecticut. As a result of this scheduled relocation, Hager surrendered possession of his six-room, rent-controlled apartment located in the fashionable Gramercy Park section of Manhattan, for which he had been paying a monthly rental of approximately $125. Plaintiff, his wife and children then moved to Stamford, Connecticut.

On June 23, 1980, after almost two years of importunings and inducements by Union Carbide to Hager to relocate, Hager was advised by Union Carbide that his position was being eliminated, but that efforts would be made to secure another corporate position at Union Carbide for him. No such other position was found for Hager and he was removed from Union Carbide's payroll as of September 30, 1980.

Concededly, the facts as given above are those asserted by plaintiff in the complaint and are contested by defendant. However, it is axiomatic that the averments of the complaint must be taken as true and read in a light most favorable to the plaintiff in connection with a motion to dismiss pursuant to CPLR 3211 (subd [a], par 7). (See *Denihan Enterprises v O'Dwyer,* 302 NY 451.) This court has stated the liberal interpretation to be given a complaint under these circumstances: "If, upon any reasonable construction of [the facts alleged], the allegations would entitle plaintiff to a recovery judicial inquiry comes to an end and the complaint must be adjudged to be sufficient" (*Silsdorf v Levine,* 85 AD2d 297, 299-300).

Plaintiff's first cause of action alleges that defendant breached "an agreement for plaintiff's continued employment" when his services were terminated. It is the settled law in New York that when an employment is for an indefinite term, it is presumed to be a hiring at will, which may be freely terminated by either party at any time for any reason (see *Murphy v American Home Prods. Corp.,* 58 NY2d 293). However, the Court of Appeals, in *Weiner v McGraw-Hill, Inc.* (57 NY2d 458), found that, based upon the course of the parties' conduct and the totality of the circumstances, the parties had entered into a binding contract. The court enumerated as factors the defendant company's personnel policies, plaintiff employee's reliance upon these policies and various written and oral representations made by the employer to plaintiff concerning his continued employment. As detailed in *Weiner,* the Court of Appeals noted that when New York adopted the "at-will" rule in *Martin v New York Life Ins. Co.* (148 NY 117), it afforded it no greater status

than a rebuttable presumption. The *Weiner* court went on to say: "In determining whether such a presumption is overcome here, the trier of the facts will have to consider the 'course of conduct' of the parties, 'including their writings' (*Brown Bros. Elec. Contrs. v Beame Constr. Corp.*, 41 NY2d 397, 399) and their antecedent negotiations. Moreover, as *Brown* suggests (at p 400), it is not [the employer's] subjective intent, nor 'any single act, phrase or other expression', but 'the totality of all of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain', which will control" (*Weiner v McGraw-Hill, Inc., supra*, pp 466-467).

Thus, plaintiff alleges that defendant repeatedly made express written and oral offers of a position to him in Danbury, Connecticut, in exchange for his commitment to move to that area. He further asserts that he accepted by seeking and obtaining a new residence in Connecticut and by signing the May 7 letter of commitment. He also surrendered his rent-controlled apartment in Gramercy Park. Plaintiff, in his pleading, does not rely merely on oral assurances by defendant or mere assertions (cf. *Patrowich v Chemical Bank*, 98 AD2d 318, app dsmd as to defendant Chemical Bank 62 NY2d 801, affd as to defendant Corney 63 NY2d 541), but upon numerous written corporate communications and upon his own actions taken in reliance upon Union Carbide's alleged promises and representations of continued employment in Connecticut.

It is not necessary for us to invoke some exotic principle of equitable estoppel to reach a fair result in this case. Such a determination can easily be justified by the simple application of the common garden-variety principles of contract law.

The actions of the parties herein make out an even more persuasive case than those alleged in *Weiner* (*supra*). They support a finding that the plaintiff relied on Union Carbide's request and acted to his substantial detriment, which constituted an ample basis for an enforceable employment contract between the parties. The promise of Union Carbide, which was both express and implied (and may be fairly inferred from the complaint), was that if Hager acted in accordance with his employer's numerous oral and written requests to work for the company in Connecticut, an employment contract was created, no longer simply terminable "at will", but to continue in Connecticut until such time as there may be reasonable grounds for termination.

"In the same vein, it has been put that 'where the promisor makes a request, the only reliance which makes the promisor's failure to perform actionable is the promisee's doing what is

requested and that reliance if detrimental is consideration and liability cannot be predicated on promissory estoppel' (Snyder, More On Promissory Estoppel, 26 Brklyn L Rev 41). In so saying, Professor Snyder points up the interesting fact that, because, on analysis, most reported applications of promissory estoppel involve the forbearance of a right or benefit by the promisee at the request of the promisor, thus placing them within the mainstream of contract law, their reliance on promissory estoppel was unnecessary (see, e.g., *Rosen v Guaranteed Sanitation,* 32 Misc 2d 698)" (*Weiner v McGraw-Hill, Inc., supra,* p 465, n 6).

Accordingly, the order of the Supreme Court, New York County (Shorter, J.), entered on March 28, 1984, which granted defendant's motion to dismiss the complaint pursuant to CPLR 3211, should be modified, on the law, to deny said motion as to the first cause of action of the complaint, and otherwise affirmed, without costs.