ALEXANDER SABETAY, Respondent-Appellant, v STERLING DRUG, INC., Appellant-Respondent.

First Department, January 23, 1986

## APPEARANCES OF COUNSEL

*Alan M. Koral* of counsel *(Nicholas J. D'Ambrosio, Jr.,* with him on the brief; *Vedder, Price, Kaufman, Kammholz & Day,* attorneys), for appellant-respondent.

*Wayne N. Outten* of counsel *(Lankenau, Kovner & Bickford,* attorneys), for respondent-appellant.

## OPINION OF THE COURT

SULLIVAN, J.

At issue is the sufficiency of a complaint alleging wrongful discharge, and for which recovery is sought both in tort and contract.

Hired by defendant Sterling Drug, Inc., in 1972 without a written contract of employment, plaintiff, a director of financial projects, was discharged effective December 31, 1984, in the aftermath of the June 1983 dissolution of Sterling's Greek manufacturing facility, the liquidation of which plaintiff had been administering. He was recalled to New York in February 1984 and was notified of his discharge in July 1984 when no job within Sterling or any of its subsidiaries could be found for him. Plaintiff claims that Sterling's reasons for discharging him are pretextual and that his employment was terminated solely because he refused to participate in "tax avoidance schemes" and the maintenance of "slush funds", and "blew the whistle" on these illegal activities. His complaint alleges four contract and three tort causes of action, all based on his wrongful discharge.

Sterling did not answer, but moved instead, pursuant to CPLR 3211 (a) (7) to dismiss the complaint on the ground that none of the seven causes of action stated a cognizable claim. Special Term dismissed the tort actions but denied the

motion as to the four contract causes of action. Both sides appeal, plaintiff from the dismissal of his tort claims, and Sterling from the denial of its motion to dismiss the contract actions. We affirm the dismissal of the causes of action sounding in tort. Since, however, we find that the causes of action based on breach of an implied contract of employment fail to state a cause of action, we also dismiss those causes and modify accordingly.

In his first cause of action, plaintiff alleges that a statement in Sterling's corporate personnel policy manual constitutes a contractual commitment not to discharge him except for cause, unsatisfactory performance, permanent separation, i.e., elimination of a function or partial or full location closing, lack of work, resignation, retirement or death. Plaintiff claims that, as a manager, he "understood that those were the only reasons to terminate an employee", and that in reliance "on this assurance of job security" he discouraged "inquiries from other prospective employers." Citing *Weiner v McGraw-Hill, Inc.* (57 NY2d 458) and distinguishing *Murphy v American Home Prods. Corp.* (58 NY2d 293), Special Term held that "plaintiff can rest upon Sterling's Corporate Policy handbook containing an express limitation" on its right to terminate an at-will employment.

■ In our view, Special Term erred in its reliance on *Weiner (supra).* It is still the law of this State that unless an employment is for a definite period of time the hiring is presumed to be at will. *(Martin v New York Life Ins. Co.,* 148 NY 117, 121; *Watson v Gugino,* 204 NY 535; *Edwards v Citibank, N. A.,* 100 Misc 2d 59, *affd* 74 AD2d 553, *appeal dismissed* 51 NY2d 875.) "[A]bsent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *(Murphy v American Home Prods. Corp.,* 58 NY2d, at p 305.) As the Court of Appeals made clear in *Murphy,* the *Weiner* exception to the general rule that termination of an at-will employment cannot give rise to a cause of action for breach of contract requires, *inter alia,* and at the very least, "an express limitation on the employer's right of discharge" *(supra,* at p 305). The requirement that there be an express limitation on the employer's right to terminate an at-will employment for the *Weiner* exception to apply has been recently restated in *O'Connor v Eastman Kodak Co.* (65 NY2d 724 [plaintiff's reliance upon the popular perception of Kodak as a "womb to tomb"

employer and its "Performance Appraisal System" requiring periodic evaluation of each employee found insufficient to constitute a limitation on its right to terminate at-will employment]; *accord, Rizzo v International Brotherhood of Teamsters, Local 237,* 109 AD2d 639).

Here, it is clear that the personnel manual's termination statement, a seven-page document categorizing the different kinds of terminations and reciting the severance benefits to which an employee so terminated is entitled, does not contain any express limitation on Sterling's right to terminate an at-will employment. Nowhere does the manual limit the reasons for which an employee may be terminated to those listed in the termination section. Indeed, as Sterling's corporate director of personnel noted, Sterling employees have been dismissed for many reasons not encompassed by the termination statement, including obsolescence of technical skills, personality conflicts and office politics. Notably, the statement includes numerous reasons for discharge other than just cause, and Sterling claims that plaintiff's discharge was for one of the stated reasons. Nothing in *Weiner (supra)* supports the proposition that every statement in a personnel manual regarding termination constitutes a contractual commitment. Only an express commitment, not present here, that the employee will not be terminated in the absence of just cause is within its purview.

We also note that the record discloses uncontroverted evidence that the termination statement was set forth in a manual of highly restricted circulation; that plaintiff, who was neither a high company official nor a personnel administrator, was not among those to whom the manual was distributed; that the language relied upon was not in existence before 1979, and that the termination policy appears only in the Corporate Employee Relations Manual. Less than 50 copies of the manual were circulated prior to 1979. Of the 231 copies now in circulation, only nine have been distributed to plaintiff's division, which has 12,000 employees worldwide. Thus, plaintiff cannot show inducement. In fact, it is not even alleged, although reliance is. This court has held, however, that not even an employee's commitment to relocate and his subsequent move with his family from New York City to Connecticut constitutes a sufficient predicate upon which to base an agreement not to terminate an at-will employment. *(See, Hager v Union Carbide Corp.,* 106 AD2d 348.) Since this important criterion of the *Weiner* rationale is not present and

the personnel manual's termination statement contains no express limitation on Sterling's unfettered right to terminate an at-will employment at any time, the first cause of action should have been dismissed.

The remaining contract causes of action allege that plaintiff was fired because he refused to violate corporate financial policies and foreign and domestic tax law (second); because, as required by applicable corporate policies, he reported the alleged violations to high-echelon Sterling officials (fourth); and, because he revealed, as required by Sterling policies, that certain officials were maintaining an illegal "slush fund" (sixth). Citing the provision in plaintiff's employment contract in which he agreed, if employed, to abide by Sterling's rules and regulations, Special Term sustained all three causes of action with the comment, "[u]nder the principles of *Murphy* and *Weiner,* if the employee is bound by these rules, so is the employer, and allegations of breach will sustain a cause of action based upon mutuality of promise." Aside from the fact that the Court of Appeals expressly rejected the lack of mutuality argument advanced in *Weiner* (57 NY2d, at pp 463-464), the claim asserted in the second, fourth and sixth causes of action is identical to that urged by the plaintiff in *Murphy,* who, alleging, *inter alia,* that he was dismissed in retaliation for his disclosure of illegal accounting manipulations, contended "that the company's internal regulations required him to make the disclosure that he did" (58 NY2d, at p 298). Although styled "good faith and fair dealing", the cause of action asserted there was identical to that alleged by plaintiff here, namely, that the retaliatory discharge of an employee for having disclosed accounting improprieties, as required by the employer's own financial policies, constituted a breach of a contractual commitment not to discharge an employee for observing company policy. The Court of Appeals rejected this argument:

"[I]n the case now before us, plaintiff's employment was at will, a relationship in which the law accords the employer an unfettered right to terminate the employment at any time. In the context of such an employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination. The parties may by express agreement limit or restrict the employer's right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent * * *

"Of course, if there were an express limitation on the employer's right of discharge it would be given effect even though the employment contract was of indefinite duration." *(Murphy v American Home Prods. Corp.,* 58 NY2d 293, 304-305, *supra.)*

Unfortunately for plaintiff, there is no express provision limiting Sterling's right to discharge its employees, either in the corporate policies cited by plaintiff regarding ethical financial conduct and the reporting of infractions, or in the language of his employment application regarding the employee's adherence to company rules and regulations. The absence of any express limitation on Sterling's discharge rights in any of its company policies should thus have compelled dismissal of the second, fourth and sixth causes of action.

██ Special Term properly dismissed the tort causes of action alleging a common-law right not to be discharged in retaliation for refusing to violate domestic and foreign tax laws (third), for disclosing such violations by Sterling's employees (fifth), or for reporting other employee misconduct of an unlawful nature (seventh). These allegations are virtually indistinguishable in substance from those in *Murphy,* where the plaintiff claimed "that his firing was in retaliation for his revelation to officers and directors of defendant corporation that he had uncovered at least $50 million in illegal account manipulations of secret pension reserves * * * as well as in retaliation for his own refusal to engage in the alleged accounting improprieties" (58 NY2d, at p 298). It was there held (at p 297): "This court has not and does not now recognize a cause of action in tort for abusive or wrongful discharge".

Accordingly, the order, Supreme Court, New York County (Richard W. Wallach, J.), entered October 23, 1984, which, *inter alia,* denied defendant's motion to dismiss the first, second, fourth and sixth causes of action, should be modified, on the law, to dismiss said causes of action, and, except as thus modified, affirmed, without costs and disbursements.

SANDLER, J. P., ROSS and KASSAL, JJ., concur with SULLIVAN, J.; ELLERIN, J., concurs on constraint of *Murphy v American Home Prods. Corp.* (58 NY2d 293).

Order, Supreme Court, New York County, entered on October 23, 1984, unanimously modified, on the law, to dismiss the first, second, fourth and sixth causes of action, and, except as thus modified, affirmed, without cost and without disbursements.