**Gerard G. BETZ, Plaintiff,**

v.

**The LEGAL AID SOCIETY, Defendant.**

**No. 89 Civ. 3401 (JES).**

United States District Court,
S.D. New York.

Nov. 19, 1992.

Frederick A. Spinelli, New York City, for plaintiff.

Proskauer Rose Goetz & Mendelsohn (Allen I. Fagin, Paul Salvatore, Andrew R.

Gold, of counsel), New York City for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Defendant in the above-captioned action moves for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, that motion is granted.

## BACKGROUND

Plaintiff, Gerard G. Betz, was employed by defendant, The Legal Aid Society (the "Society"), since on or about June 1953, *see* Pre–Trial Order ¶ 2, and was terminated from his employment on December 16, 1988. *Id.* ¶ 1.[1] Prior to his termination, plaintiff was employed as an Assistant Attorney-in-Charge, designated as the Attorney-in-Charge of Administration of the Criminal Defense Division. *Id.* ¶ 3.

On September 28, 1988, Robert M. Baum was appointed as the Attorney-in-Chief for the Society, wherein one of his first tasks was to determine if restructuring of any of the management positions was appropriate. *See* Affidavit of Robert M. Baum (sworn to December 6, 1990) ("Baum Aff.") ¶¶ 3–4. After meeting with the plaintiff, Baum decided to eliminate the position of Assistant Attorney-in-Charge of Administration because the duties of that position could be performed as effectively and more efficiently by a non-attorney.[2] *Id.* ¶ 6.

Once this decision was made, Baum met with the plaintiff and offered him two options: (1) he could transfer to the position of Senior Trial Counsel at any of the borough offices with the same salary and benefits he was earning as the Assistant Attorney-in-Charge of Administration; or 2)

he could elect early retirement under the terms of the Society's pension plan. *Id.* ¶¶ 8, 10. Plaintiff refused both of these options, claiming that he could not be removed from his position since Edward Q. Carr, the Society's Attorney-in-Chief from 1960 to 1973, had promised him that he would not be removed nor would his position be changed without his consent.[3] *Id.* ¶ 11.

After being informed that the President of the Society at the time plaintiff assumed his position as Assistant Attorney-in-Charge was not aware of any such promise, Baum informed plaintiff that it was the Society's view that he had no contractual right of lifetime employment. *See* PTO ¶ 58. Plaintiff still refused to choose one of the two options, and consequently Baum informed him that he was being assigned to the Brooklyn office as Senior Trial Counsel with the same salary and benefits that he had been receiving previously, and that, if he did not choose to accept this position, his employment would be terminated. *Id.* ¶¶ 59–60; Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 3(g) of the United States District Courts for the Southern and Eastern Districts of New York ("Def.'s 3(g) Statement") ¶ 42. Plaintiff did not report to work at the Brooklyn office and was consequently terminated on December 16, 1988. *See* PTO ¶¶ 61–62.

Plaintiff filed this action on May 17, 1989, alleging claims under the Age Discrimination in Employment Act (the "ADEA"), New York State's Human Rights Law, and the Employee Retirement Income Security Act ("ERISA"), and claiming tortious discharge under New York law, breach of an oral contract and breach

---

**1.** References to the Joint Pre–Trial Order that was signed by both parties and filed on November 4, 1991 will be referred to as the "PTO." Subsequent to that filing, plaintiff submitted "Plaintiff's Addendum to Pre–Trial Order," which will be referred to as "Addendum PTO." All references to facts not in dispute will be to the PTO.

**2.** Plaintiff's duties consisted of keeping track of the Criminal Division's attorneys' vacation,

leave, and compensatory time, bar examination results, completing personnel action notices, and other clerical type functions. *See* PTO ¶ 4; Baum Aff. ¶ 5.

**3.** Mr. Carr died in 1983. *See* PTO ¶ 40. The only other alleged witness to this promise was Milton Adler, who died in 1987. *Id.* ¶¶ 39, 41.

of an implied written contract. Subsequently, on July 24, 1991,[4] plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and with the New York State Division of Human Rights ("SDHR").[5] *Id.* ¶¶ 51, 53.

On November 21, 1991, after the parties had submitted a Joint Pre–Trial Order containing all undisputed facts as well as each party's contentions of fact, defendants filed a renewed summary judgment motion. On December 24, 1991, plaintiff, claiming he misunderstood what he had signed when he signed the Joint Pre–Trial Order, filed an addendum which contained numerous material changes to the undisputed facts section. The defendant objected to the addendum and argued that it was filed solely to defeat the summary judgment motion and should not be accepted by this Court. The Court referred the issue to Magistrate Judge Naomi Buchwald for a hearing, who determined that the changes in the addendum to the pre-trial order were not the result of honest error by the plaintiff.[6] *See* Memorandum and Order dated May 5, 1992.

## DISCUSSION

At the outset, it should be noted that plaintiff's federal age discrimination claim must be dismissed as procedurally barred for failure to comply with the filing requirements of the ADEA. Under the ADEA, no civil action may be commenced until 60 days after a charge alleging unlawful discrimination has been filed with the EEOC and with the SDHR. 29 U.S.C. §§ 626(d), 633(b) (1988). In addition, plaintiff must file a claim with the EEOC within 300 days after the alleged unlawful practice or within 30 days after notice of the termination of the state proceedings, whichever is earlier. Plaintiff, in complete disregard of these procedures, commenced a civil action prior to any filing with the EEOC or the SDHR, and did not file a charge with those agencies until two and one-half years after his termination.[7]

Next, plaintiff claims that due to his termination he forfeited approximately 140 accrued and unused vacation/annual leave days in violation of ERISA. However, since the funds used by the Society for annual leave benefits are derived from the general assets of the Society and not from

---

**4.** The exact date of the filing is disputed by plaintiff, who claims the filing was approximately one month earlier, on June 17, 1991. *See* Addendum PTO ¶¶ 50–51, 53. However, the difference in filing dates is not relevant to this Court's analysis of the discrimination claims because regardless of which date is deemed correct, these claims, as discussed below, must be dismissed.

**5.** Plaintiff also delivered a copy of his federal complaint and the Society's answer to the New York City Commission on Human Rights on or about July 28, 1989. *See* PTO ¶ 54.

**6.** The Court agrees with Magistrate Judge Buchwald and hereby adopts her Report and Recommendation. However, the Court notes that even accepting the material changes submitted by the plaintiff to the Pre–Trial Order, summary judgment should still be granted.

**7.** The Court declines to exercise pendent jurisdiction over plaintiff's remaining state Human Rights Law claim for reasons articulated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Moreover, in light of plaintiff's procedural violations, plaintiff should not be permitted to have his state law claim heard in federal court. When a plaintiff complies with the ADEA and files his claims with the SDHR, *see* 29 U.S.C. § 633(b) (1988), courts in this district follow the state Human Rights Law, *see* N.Y.Exec.Law § 297, subd. 9 (McKinney Supp. 1991), and refuse to hear pendent state law claims because that plaintiff has elected an administrative remedy. *See Promisel v. First American Artificial Flowers*, 943 F.2d 251, 257 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992); *Keeley v. Citibank, N.A.,* 711 F.Supp. 157, 161 (S.D.N.Y. 1989); *Giuffre v. Metropolitan Life Insur. Co.,* 129 F.R.D. 71, 79 (S.D.N.Y.1989); *Hunnewell v. Manufacturers Hanover Trust Co.,* 628 F.Supp. 759, 761 (S.D.N.Y.1986); *Collins v. Manufacturers Hanover Trust Co.,* 542 F.Supp. 663, 672 (S.D.N.Y.1982). Had Betz complied with these procedures, any court remedy would have been barred since he has not shown that his SDHR complaint was dismissed for administrative convenience. *Promisel, supra,* 943 F.2d at 257. Consequently, Betz's state Human Rights Law claim must be dismissed without prejudice. Indeed, any result other than dismissal of his state law claim would enable plaintiff to benefit from his procedural wrongdoing and encourage future claimants to ignore the clear procedures established by Congress and the New York State Legislature.

a separate fund,[8] these funds are not part of an "employee welfare benefit plan" within the meaning of ERISA. *Massachusetts v. Morash*, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989).[9]

■ Plaintiff also asserts that he was "caused to suffer loss of morale, confidence, self-esteem, humiliation and loss of reputation." *See* Verified Complaint ("Compl.") ¶ 38. These allegations appear to be making a claim for intentional infliction of emotional distress which requires a showing of "extreme and outrageous conduct intentionally or recklessly causing severe emotional distress." *Murphy v. Amer. Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983). The only paragraph in the complaint which arguably relates to this claim states that there was a "rumor going around that Betz was going to resign" and that "unknown to Betz, his fate was general knowledge[.]" Compl. ¶ 22. Clearly, these facts fall far short of the requirements of an intentional infliction of emotional distress claim.[10]

■ Plaintiff's next claim is that two personnel documents—the tenure policy as stated in the Rules and Regulations of the Society and the definition of "employee" in the 1970 version of the Society's retirement plan—created an implied written contract to continue his employment indefinitely and to permit dismissal only for "just cause." The well-settled rule in New York is that where employment is for an indefinite term, it is presumed to be a hiring at will which may be terminated by either party at any time and for any reason or no reason, *Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982); *Murphy v. Amer. Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 235, 448 N.E.2d 86, 89 (1983), except where that right has been limited by express agreement.[11]

The documents that plaintiff argues create an implied contract state merely that attorneys of the Society who are permanent attorneys are those who have been informed by the Board of Directors that they are not subject to rotation, and that an "employee" is an attorney who has "been engaged by the Society on a permanent basis." This language does not rise to the level of an express limitation on the right to discharge an employee required by *Weiner.* In that case the employer's personnel manual expressly provided that an

---

8. Indeed, plaintiff's addendum to the PTO states that he does not know where the funds come from but relies on language allegedly derived from the annual reports of the Society to create an inference that payments do come from a separate fund. This language, however, states: "fringe benefits and other employee costs are allocated on an overall basis, corresponding generally to the allocation of salary expenses." It seems clear therefore that fringe benefits, like salaries, are paid out of the general assets of the Society.

9. The Court rejects plaintiff's contention that *Morash* does not apply here because the claimed benefits in that case were for vacation pay alone as distinguished from plaintiff's claim, which is for annual leave, consisting of vacation pay, religious holidays, and personal days. The *Morash* Court gave deference to the Secretary of Labor's regulation, which states that "payment of compensation, out of an employer's general assets, on account of periods of time during which the employee, although physically and mentally able to perform his or her duties and not absent for medical reasons ... performs no duties," shall not be included in the definition of "employee welfare benefit plan" under ERISA.

*Morash*, 490 U.S. at 116–18, 109 S.Ct. at 1673. Clearly, the claimed benefits at issue here fall within that definition.

10. Moreover, the New York Court of Appeals held in *Murphy* that New York does not recognize a cause of action for abusive or wrongful discharge of an at-will employee and that "[a] plaintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting his cause of action in terms of a tort of intentional infliction of emotional distress." *See Murphy*, 461 N.Y.S.2d at 236, 448 N.E.2d at 90.

11. The Courts have interpreted *Weiner* to require a showing of an express promise not to discharge without cause and reliance on that promise in rejecting alternative offers of employment. *Wright v. Cayan*, 817 F.2d 999, 1004 (2d Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987); *Patrowich v. Chemical Bank*, 98 A.D.2d 318, 470 N.Y.S.2d 599, 603 (1st Dept.), *aff'd*, 63 N.Y.2d 541, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984) (per curiam); *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 514 N.Y.S.2d 209, 212–13, 506 N.E.2d 919, 922 (1987).

employee enjoyed permanent job security and could only be discharged for "just cause." Moreover, the use of the language "permanent employee" cannot alone create an express limitation on the right to terminate. *Wright v. Cayan,* 817 F.2d 999, 1003 (2d Cir.), *cert. denied,* 484 U.S. 853, 108 S.Ct. 157, 98 L.Ed.2d 112 (1987).

■ Plaintiff's final cause of action alleges that plaintiff had an oral contract with the Society based on an alleged promise by a prior Attorney-in-Chief, Edward Carr, that plaintiff's position would not be abolished, that he would not be removed from his position, and that no one would be promoted over him without his consent. *See* Deposition of Gerard G. Betz at 176, 182, 191. Although there is a dispute as to whether any such promise was ever made, assuming, *arguendo,* as the Court must for purposes of this motion, that Mr. Carr had promised plaintiff that he could work for as long as he wished, a contract of lifetime employment is deemed "unusual" under New York law and consequently, express authority on the part of the promisor must be shown. *Burke v. Bevona,* 931 F.2d 998, 1001–02 (2d Cir.1991).

Plaintiff claims that Mr. Carr derived his authority to make this promise from the Society's bylaws, which state merely that the Attorney-in-Chief is "responsible for the Society's legal work; and shall have charge and supervision of its offices and branches," and from a statement in the 1975–76 President's Report which says that the Board of Directors "is not involved in day-to-day decision making." [12] This language, however, only implies that Carr was authorized to engage in transactions in the ordinary course of business, "which, by definition, excludes unusual and extraordinary transactions." *Burke,* 931 F.2d at 1002. *See Heaman v. E.N. Rowell Co.,* 261 N.Y. 229, 231, 185 N.E. 83 (1933) (au-

thority to hire, fire, and set compensation does not satisfy the express authority requirement).

### CONCLUSION

Accordingly, for the reasons set forth above, defendant's motion for summary judgment shall be and hereby is granted. The Clerk of the Court is directed to close the above-captioned action.

It is SO ORDERED.

---

12. In the joint pre-trial order, one of the undisputed facts is that Mr. Carr was never authorized by anyone at the Society to enter into a lifetime contract. *See* PTO ¶ 48. However, in the addendum, plaintiff states that stipulating to this fact was a mistake and that he has contended all along that Mr. Carr derived his authority from the bylaws. *See* Addendum PTO ¶ 48.

Since Magistrate Judge Buchwald found plaintiff's claimed mistakes were not the result of honest error; plaintiff's oral contract claim could be dismissed simply based on that stipulated fact. However, regardless of plaintiff's *stipulation, plaintiff's oral contract claim must* be dismissed for the reasons discussed above.