(October 19, 1999)

■ FABRI-COM, INC., Appellant, v TEX-FI INDUSTRIES, INC., Respondent, et al., Defendant. [696 NYS2d 447] —Order, Supreme Court, New York County (Richard Braun, J.), entered on April 2, 1998, which, *inter alia*, granted the motion of defendant Tex-Fi Industries, Inc. (Tex-Fi) for summary judgment dismissing the complaint based on the Statute of Frauds, unanimously modified, on the law, to deny Tex-Fi's motion to dismiss plaintiff's cause of action for breach of contract insofar as it was based on plaintiff's termination without cause, and otherwise affirmed, with costs.

Plaintiff Fabri-Com is in the business of performing market research and procuring customers for manufacturers and distributors of "narrow fabrics", i.e., woven and knit narrow elastic and gauze fabrics generally distributed to the medical

and apparel markets. Defendant Tex-Fi, and its predecessors in interest,* are manufacturers and distributors of such fabrics.

In 1985, Fabri-Com, by its principal, Robert Shapiro, became affiliated with Stedman as one of its outside sales representatives in the New York metropolitan area, selling to companies involved in the packaging and resale of knit elastic wrap bandages. As an outside sales representative, Fabri-Com's role would be to obtain a sample or set of specifications for a proposed product from one of its accounts and bring it to Stedman to be created and, eventually, manufactured.

The first project as to which Fabri-Com approached Stedman concerned the development of a particular type of knit bandage for Johnson & Johnson. Stedman duly manufactured samples and forwarded them to Johnson &, Johnson for approval. That approval was obtained and Stedman began to manufacture the product for Johnson & Johnson.

Plaintiff claims that it thereupon entered into an oral agreement with Stedman that it would continue to be entitled to commissions on sales to the accounts that it "developed" for as long as Stedman continued to do business with it. In addition to Shapiro's own sworn statements, in support, plaintiff offered the deposition testimony of Stedman's former employee, who indicated that the agreement with plaintiff was meant to continue "indefinitely * * * conditional on satisfactory performance, not an embarrassment to the firm" and on the assumption that the product plaintiff was selling remained "viable".

Later, after the transfer of Stedman to Elastex, the parties renegotiated, and, though it appears from the parties' exchange of letters that they did not reach a meeting of the minds as to a number of terms, they agreed that plaintiff would be paid a 7% commission of all sales billed for the narrow fabrics sold through Fabri-Com to certain specified accounts, including Johnson & Johnson (CPI), and would no longer receive commissions as to certain other accounts which plaintiff had formerly serviced. As to JJMI, a separate division of Johnson & Johnson, plaintiff was also promised a fee of 5% on 1991 sales or, if no sales resulted in 1991, 5% on 1992 sales. There

---

* In January 1987, Tex-Fi purchased Stedman Elastics Corporation (Stedman). Stedman became a wholly owned subsidiary of Tex-Fi under the name Elastex, Inc., until it was merged into Tex-Fi in 1992. We reject the alternative argument of defendant Tex-Fi that it is entitled to summary judgment on its argument that it is not a successor in interest to Stedman, and only a purchaser of assets. This was not the basis of the decision of the motion court and, on the record before us on this appeal, questions of fact remain as to this issue.

was no agreement, in writing, as to plaintiff's entitlement to commissions for JJMI for subsequent years.

Plaintiff contends that the oral promise by Stedman to make it the permanent, exclusive representative for its accounts was still in place despite the renegotiation of other terms. Defendant contends that, on the assumption there was such an agreement, it was not binding and defendant could terminate plaintiff's representation at will. Thus, according to defendant, plaintiff was entitled to receive commissions only as long as it actually serviced the accounts. On November 25, 1992, plaintiff was terminated as sales representative without stated cause.

We find that insofar as plaintiff's claim was based on its contention that it was promised perpetual commissions on any of the accounts it had formerly serviced or any products it had "developed" regardless of whether it continued to service the account, it was properly dismissed. Such a promise would not be capable of performance within a year and would therefore fall within the writing requirement of the Statute of Frauds (see, Zupan v Blumberg, 2 NY2d 547; Guterman v RGA Accessories, 196 AD2d 785). Contrary to plaintiff's contentions, the letters and memoranda of the parties do not constitute a sufficient writing to satisfy the Statute of Frauds. Rather, they show only negotiations that quite clearly did not result in any agreement as to the crucial terms.

Nor is there merit to plaintiff's cause of action for quantum meruit, inasmuch as plaintiff has set forth no evidence that it is entitled to additional amounts for work that it has already performed.

However, we find that plaintiff has set forth sufficient evidence to withstand summary judgment on its cause of action for breach of contract insofar as the claim was based on its termination without cause. The alleged oral promise to maintain plaintiff as a sales representative unless Shapiro's performance was unsatisfactory or he was an embarrassment to the firm or the product he was selling did not remain "viable" was not in violation of the Statute of Frauds (see, Murphy v American Home Prods. Corp., 58 NY2d 293, 305, n 2; Weiner v McGraw-Hill, Inc., 57 NY2d 458, 463). Moreover, questions of fact remain as to the extent, if any, of plaintiff's reliance on the alleged promise. Furthermore, at this juncture, defendant has not set forth evidence to establish that it had cause to terminate plaintiff. Concur—Ellerin, P. J., Williams, Mazzarelli and Buckley, JJ.